**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSEPH L. BURNS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. EP-17-CV-00264-DCG** |
| | § | |
| **KEVIN MCALEENAN, ACTING** | § | |
| **SECRETARY, U.S. DEPARTMENT OF** | § | |
| **HOMELAND SECURITY;** | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered "Defendant's Motion for Summary Judgment" (ECF No. 22), as substituted by "Defendant's Substituted Motion for Summary Judgment" (ECF No. 31), filed by Defendant Kevin McAleenan ("McAleenan").[1]  The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C of the Local Court Rules for a Report and Recommendation ("R&R") on July 2, 2019, by United States District Judge David C. Guaderrama.  (ECF. No. 39).

For the reasons set forth below, the Court **RECOMMENDS** that "Defendant's Motion for Summary Judgment"  (ECF No. 22), as substituted by "Defendant's Substituted Motion for Summary Judgment" (ECF No. 31), be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff brought this action against the Secretary of the United States Department of Homeland Security ("DHS") in his official capacity.  On April 8, 2019, Kevin McAleenan was designated as the Acting Secretary of the Department of Homeland Security.  *See* DEP'T OF HOMELAND SEC, https://www.dhs.gov/person/kevin-k-mcaleenan (last visited August 19, 2019).  Pursuant to Federal Rule of Civil Procedure 25(d), McAleenan is automatically substituted as a party in this action.  While the Motion for Summary Judgment was filed before McAleenan became the Acting Secretary of DHS, the Court will refer to the Defendant as McAleenan, regardless of when the relevant document was filed.

# I.  BACKGROUND

## a.  Procedural Background

"Plaintiff's Original Complaint and Demand for Jury Trial" ("Complaint") was filed in the United States District Court for the Western District of Texas, El Paso Division, on August 24, 2017, by Plaintiff Joseph L. Burns ("Burns"), alleging claims of disability discrimination, hostile work environment, and retaliation. (ECF No. 1).  On April 4, 2019, McAleenan filed "Defendant's Motion for Summary Judgment" seeking summary judgment on all of Burns's claims.  (ECF No. 22).  After being granted two extensions of time to file his response and granted leave to exceed page limitations (Text Orders dated April 23, 2019 & April 26, 2019), Burns filed his "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Response") on May 3, 2019.  (ECF No. 25).  On May 30, 2019, McAleenan was granted leave to file his substituted motion for summary judgment and a reply to Burns's Response.  (Text Orders dated May 30, 2019).  On May 31, 2019, McAleenan filed his "Defendant's Substituted Motion for Summary Judgment' ("Motion") (ECF No. 31) and his "Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" ("Reply") (ECF No. 32).  On June 13, 2019, Burns filed his "Plaintiff's Sur-Reply in Opposition to Defendant's Motion for Summary Judgment" ("Sur-Reply") (ECF No. 35) after being granted leave to file.  (Text Order dated June 7, 2019).  Finally, McAleenan's "Defendant's Response to Plaintiff's Sur-Reply in Opposition to Defendant's Motion for Summary Judgment") ("Sur-Reply Response") (ECF No. 37) was filed on June 21, 2019, after being granted leave to file.  (Text Order dated June 20, 2019).

### b.       Factual Background[2]

Burns is a Field Technology Officer ("FTO") Telecommunications Specialist who began working for the United States Customs and Border Protection ("CBP") on August 12, 2012. (ECF No. 25-2, p. 1). At the start of his employment, Burns submitted certification from the Department of Veterans Administration ("VA") of his service-connected disability rating. (*Id*.).[3] Even though Burns has this disability certification from the VA, during his employment with CBP as a FTO, Burns has been capable of performing his job as a FTO, has not had any safety issues, and has never sought a reasonable accommodation. (ECF No. 25-2, p. 8).

While Burns's job duties include climbing tall towers, which is done in teams of two, he is a supplemental climber, meaning he is not required to climb towers every day. (*Id*. at 1-2). When Burns is required to climb towers, he receives hazardous duty pay. (*Id*. at 2).

Burns's current supervisor, Marcus Yrrobali ("Yrrobali"), became his supervisor in December 2015. (*Id*.). Prior to becoming a supervisor, Yrrobali was a FTO and Burns's colleague. (*Id*.). During Yrrobali's transition into his role as supervisor, Yrrobali was informed by the previous supervisor, Richard Apodaca ("Apodaca"), of concerns allegedly raised by some of Burns's co-workers related to Burns's medical issues.[4] (*Id*.). Apodaca contends that the safety concerns of the co-workers were brought to his attention by his secretary, Jeanie Molinar ("Molinar"), which she contests. (*Id*. at 3). Further, while he was Burns's supervisor, Apodaca allowed Burns to have his own office so that he could sit in a dark room to prevent or alleviate his migraines. (*Id*. at 8).

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[3] The VA certification identified Burns as being entitled to compensation for service-connected disabilities rated at thirty percent or more. (No. 32, p. 38).

[4] The parties dispute the extent of those medical concerns and which co-workers allegedly had those concerns. (ECF No. 25-2 at 2).

Notably, none of Burns's "RVSS camera team members" stated that they ever reported any concerns to Apodaca or Molinar regarding Burns. (ECF No. 32 at 43-44). After being notified of the concerns by Apodaca, Yrrobali did not independently verify those concerns with Molinar or any other employee. (ECF No. 25-2 at 3).

Subsequently, Yrrobali consulted with his supervisor Victor Fernandez ("Fernandez") for guidance on how to address the safety concerns brought to his attention by Apodaca. (*Id*.). In turn, Fernandez directed Yrrobali to seek guidance from Maria Benn ("Benn")with CBP's Labor and Employee Relations ("LER"). (*Id*.).

On March 14, 2016, Yrrobali emailed Benn ("March 14 Email") addressing the medical concerns that Apodaca brought to his attention. (*Id*.). Notably, the parties dispute the scope of the contents of the March 14 Email and whether it contained Yrrobali's subjective opinion, his first-hand knowledge, and whether or not it went beyond the scope of the information received from Apodaca. (*Id*.). In response to the March 14 Email, Benn advised Yrrobali to prohibit Burns from climbing until medical documentation was provided. (*Id*. at 3-4). Both Benn and Fernandez relied on Yrrobali's March 14 Email to determine their course of action. (ECF No. 32 at 43).

On April 6, 2016, Yrrobali issued a letter to Burns ("April 6 Letter"), restricting him from climbing based on medical concerns until Burns submitted medical documentation. (ECF No. 25-2 at 4). In response, on April 27, 2016, Burns provided a letter to Yrrobali from Dr. Robbie Rampy ("Rampy"), dated April 26, 2016 ("Rampy Letter"). (*Id*.). The Rampy Letter identified Burns as suffering from degenerative disc disease of the lumbar spine as well as chronic migraine headaches. (*Id*.). The Rampy Letter further stated that while Burns did not appear to be a danger to himself or others, Rampy could not comment, without speculating, because of Rampy's lack of behavioral health specialization. (*Id*. at 4-5). The Rampy Letter was sent by LER to CBP's

Medical Fitness Branch ("MFB") who informed Benn on May 5, 2016, that the letter was inadequate to determine if Burns could safely resume his hazardous duties and further recommended a request for additional information while continuing to restrict Burns to nonhazardous duties. (*Id*. at 5).

On August 22, 2016, Burns received a letter from Yrrobali, dated August 18, 2016 ("August 18 Letter"), informing Burns that the Rampy Letter was insufficient and requesting additional medical information. (*Id*.). After receiving the August 18 Letter, Burns sought Equal Employment Opportunity ("EEO") counseling in late August 2016. (*Id*. at 5-6).

In early September 2016, Burns and Yrrobali discussed the possibility of Burns continuing to inform his team when he could not climb, as he had done since 2012, as a possible resolution to the ongoing issues. (*Id*. at 6). The parties dispute whether Burns also suggested that he inform Yrrobali when he had taken his medications and could not climb. (*Id*.).

On September 14, 2016, after consultation with Benn and Fernandez, Yrrobali issued Burns a letter ("September 14 Letter"), rescinding the August 18 Letter's request for additional medical documentation and instead prohibiting Burns from climbing when he had taken his medication. (*Id*.).

Between April 6, 2016, and September 14, 2016, Burns was unable to be recertified as a climber because he was prohibited from climbing. (*Id*. at 7). Since the recertification classes were only offered annually, Burns was ultimately restricted from climbing for approximately thirteen months. (*Id*.).

On September 22, 2016, CBP notified Burns of the conclusion of the EEO counseling and of his right to file an EEO complaint. (*Id*. at 6). Subsequently on September 30, 2016, Burns filed an EEO complaint alleging the denial of his rights under Title VII of the Civil Rights Act, the

Americans with Disabilities Act as amended (ADA), and the Rehabilitation Act.  (*Id*. at 6-7).  The EEO complaint alleged harassment, based on Burns's physical disability, which allegedly occurred between April 6, 2016, and September 14, 2016.  (*Id*.).  On May 26, 2017, a Final Agency Decision ("Decision") was issued by DHS, finding no discrimination or harassment.  (ECF No. 22-5).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it might affect the outcome of the suit."  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citation and quotations omitted).  A "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original).

If the moving party meets this initial burden, "the onus shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Celotex Corp.,* 477 U.S. at 324).  The Court must draw all reasonable inferences in favor of the nonmoving party and refrain from making credibility determinations.  *Id.*  (quoting *Turner v. Baylor Richardson Med Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007)).

## III. ANALYSIS

McAleenan's Motion addresses Burns's claims of disability discrimination, hostile work environment, and retaliation (ECF No. 31, p. 6, 17, 21). After Burns addressed an improper medical inquiry claim in his Response, McAleenan argued in his Reply that Burns's improper medical inquiry claim should also fail. (ECF No. 32, p. 2).

"[F]ederal employees may bring disability discrimination claims against the Government under either § 501 or § 504 of the Rehabilitation Act (29 U.S.C. §§ 791 & 794)." *Pinkerton v. Spellings*, 529 F.3d 513, 515 (5th Cir. 2008). "The [Rehabilitation Act] and the [Americans with Disabilities Act] are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). However, the causation standard to determine if a violation has occurred differs between § 791 and § 794. Title 29 U.S.C. § 791(f) specifically incorporates the standards of Title I of the Americans with Disabilities Act of 1990 as the applicable standard when determining if a violation has occurred. "Under the ADA, discrimination need not be the sole reason for an adverse employment decision [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome. This rule governs cases under Section 501 of the Rehabilitation Act [29 U.S.C. § 791] as well." *Pinkerton*, 529 F.3d at 519 (5th Cir. 2008) (alteration in original) (internal quotation omitted). This "motivating factor" standard for § 791 is in contrast to the standards, for actions brought pursuant to 29 U.S.C. § 794, where the Fifth Circuit has held "that Congress did not intend to adopt the ADA standard of causation with the § 794(d) amendment." *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). Therefore, in actions brought pursuant to § 794, "[l]iability can only be found when the discrimination was 'solely by reason of her or his disability,' not when it is simply a 'motivating factor.'" *Id.*

As an initial matter, both parties appear to be proceeding under § 791 and not § 794 as the statutory basis for Burns's claims.[5] *See* (ECF No. 25, p. 11) ("Plaintiff has brought his disability claims under § 501 of the Rehabilitation Act, therefore, the correct standard of showing is 'motivating factor.'"); (*Id*. at 20) ("Here, Burns has asserted his claims under §501 as he is a federal employee covered under §501. . . ."); (EFC No. 32, p. 3) ("In Defendant's Motion, Defendant inadvertently and incorrectly referenced the wrong causation standard that should be applied to Plaintiff's claim. . . . The correct causation standard for disability discrimination claims asserted pursuant to section 501 of the RA is the 'motivating factor' test . . . ."). Because Burns unambiguously states on several occasions that he brings his claims under § 791 without mentioning § 794 and his subsequent filings do not contest McAleenan's statement that "Defendant, however, interprets Plaintiff's Response to only be asserting his claim under 29 U.S.C. § 791 and not both" (ECF No. 32, fn. 3), the Court will analyze his claims pursuant to § 791.[6] The Court will address each claim raised in McAleenan's Motion in turn, below.

a.      **Disability Discrimination**

McAleenan argues that summary judgment is appropriate for Burns's claim of disability discrimination because there was no discrimination based on disability. (ECF No. 31, p. 6). "A plaintiff alleging disability discrimination can either provide direct evidence of the discrimination or rely on the *McDonnell Douglas* burden-shifting framework." *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (citing *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688,

---

[5] The parties interchangeably cite both §§ 501 and 504 of the Rehabilitation Act and the statutory codifications at 29 U.S.C. §§ 791 and 794. Unless otherwise stated or quoting a party's filings, the Court will cite United States Code sections, 29 U.S.C. § 791 and § 794.

[6] The Court recognizes several statements from Burns's filings that could lead to the conclusion that the claim is brought pursuant to both § 791 and § 794. *See* (ECF No. 1) ("Burns will show that U.S. Customs and Border Protection . . . conduct violates . . . the Rehabilitation Act of 1973, as amended, Sections 501, et seq."); (ECF No. 25, p. 20) ("federal employees, such as Burns, may pursue remedies for disability discrimination under both 29 [U.S.C.] §§ 791 and 794. . . . Burns has done so here."). Notwithstanding these conflicting statements in Burns's Complaint, Response, and Sur-Reply, Burns unambiguously asserted his claim under §791 on multiple occasions.

694 (5th Cir. 2014)). "Both parties agree here that Burns is proceeding under *McDonnell Douglas*." (ECF No. 25, p. 11); *see* (ECF No. 32, p. 4) ("Under the *McDonnell Douglas* framework . . . .").

Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff alleging disability discrimination must first establish a prima facie case of discrimination. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016). If the plaintiff successfully establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* The plaintiff then has the burden of showing that the articulated reason is pretextual. *Id.*

## 1. Prima Facie Case of Disability Discrimination

A prima facie case of disability discrimination requires the plaintiff to show: (1) the plaintiff has a disability; (2) the plaintiff was qualified for the job; and (3) the plaintiff was subject to an adverse employment decision on account of his disability.[7] *LHC Grp., Inc.*, 773 F.3d at 697 (5th Cir. 2014).

### A. Burns's Status as Disabled

Under the ADA, a person has a disability if they have: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a

---

[7] The Court notes that the parties disagree on the elements of a prima facie case of disability discrimination. *Compare* Reply, (ECF No. 32, p. 4) (describing the four elements identified in *Hoffman v. Baylor Health Care Sys.*, 597 F.App'x 231, 234-35 (5th Cir. 2013)) *with* Response (ECF. No. 25, p. 11-12) (describing the three elements identified in *LHC*, 773 F.3d at 697 (5th Cir. 2014)). The Fifth Circuit in *LHC* identified the discrepancy in formulations. *LHC*, 773 F.3d at 695. For the reasons stated by the Fifth Circuit in *LHC*, the Court will use the three elements adopted by the Fifth Circuit in *LHC* and described by Burns. *See Id.* at 695-97; *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (using the three elements adopted by the *LHC* court.); *see also Alvarez v. Esper*, No. WA-16-CV-00172-DCG, 2018 WL 3717116, at *6 (W.D. Tex. Aug. 3, 2018) ("To establish a prima facie case of disability discrimination, a plaintiff must prove: (1) she has a disability; (2) she is qualified for the job she held; and (3) that she was subject to an adverse employment decision on account of [her] disability.")

record of such an impairment; or (C) be[en] regarded as having such an impairment (as described in paragraph (3)).” 42 U.S.C. § 12102(1).

i.    Physical or Mental Impairment

In 2008, Congress passed the “Americans with Disabilities Act Amendments Act of 2008” (“ADAAA”) to reinstate “a broad scope of protection to be available under the ADA.” ADA AMENDMENTS ACT OF 2008, PL 110–325, Sept. 25, 2008, 122 Stat 3553. Further, after the passage of the ADAAA, “[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act . . . .” *Id.* Finally. “[t]he term ‘substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.” ADA AMENDMENTS ACT OF 2008, PL 110–325, Sept. 25, 2008, 122 Stat 3553. In passing the ADAAA, Congress “clarif[ied] that the Supreme Court and [the] EEOC had interpreted the ‘substantially limits’ standard to be a more demanding one than Congress had intended.” *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Instead, “[t]he inquiry in . . . post-amendment case[s] is . . . whether [plaintiff]’s impairment substantially limits his ability ‘to perform a major life activity *as compared to most people* in the general population.’” *Id.* at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added)).

Major life activities include, but are not limited to, “[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working.” 29 C.F.R. § 1630.2(i)(1)(i). *See* 42 U.S.C. § 12102(2). Further, the term substantially limits “shall be construed broadly in favor of expansive coverage. . . .” *Id.*

McAleenan argues that Burns's VA certification, combined with his statements about his ability to do his job, do "not support a finding that [Burns] has a physical or mental impairment that substantially limits one or more major life activities." (ECF No. 31, p. 8).   In response, Burns asserts that he has a disability because his migraines and back pain substantially limit his major life activities and offers his sworn affidavit in support of his contention that he is disabled.  (ECF No. 26-1, p. 1-6); (ECF No. 25, p. 16).   In his affidavit, Burns contends that he "basically can not [*sic*] do anything when [he] has[s] a migraine."  (ECF No. 26-1, p. 2).  This includes having "had to take time off work, visit the doctor, take medication, or just sit in a dark room until the migraine subsides."  (*Id*.); *see* (ECF No. 26-1, p. 14-17) (deposition of Burns).  Further, Burns contends that his back pain limits his ability to perform manual tasks and "daily tasks such as sleeping, walking, standing, lifting, climbing, speaking, concentrating, and working."  (*Id*.); *see* (ECF No. 26-1, p. 15).

Contrary to McAleenan's assertion, Burns does not simply refer to his medical diagnosis to prove he has a disability.  Burns specifically articulated, in both his affidavit and during his deposition, multiple limitations on his major life activities created by his migraines and back pain.[8] (ECF No. 26-1, p. 2, 14-17).  In *Arrington*, the plaintiff unsuccessfully "attempt[ed] to prove that he suffer[ed] from a disability simply by referring to his medical diagnosis of diabetes. . . ."

---

[8] The ADAAA "primarily focuses on broadening the definition of 'disability' by singling out and superseding *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).  *Arrington* was decided prior to the passage of the ADAAA and relies heavily on both of those cases.  "Because those two decisions interpreted congressional intent to narrow the scope of the words 'substantially limits' and 'major' and the 'regarded as' prong in the ADA's definition of disability, Congress added 42 U.S.C. § 12102(2)-(4) to correct that perceived misinterpretation." *Id.*; *see Delaval*, 824 F.3d at n. 3 ("The 2008 amendment to the ADA, however, instructs a court to focus on whether the employer 'complied with [its] obligations," and not on determining whether an employee is disabled.") (quoting *Neely*, 735 F.3d at 245) (alteration in original).

*Arrington v. Sw. Bell Tel. Co*, 93 F. App'x 593, 597 (5th Cir. 2004). The Fifth Circuit construed the *Arrington* plaintiff's assertion that his diabetes affected his production as an "attempt[] to argue that his diabetes qualifie[d] as a disability because it substantially limited his major life activity of 'working.'" *Id.* Unlike in *Arrington*, Burns has identified how his migraines and back pain limited multiple major life activities.

Finally, the Court finds that Burns's "statements regarding his ability to do his job without causing safety issues" do not prevent a finding that Burns has a disability, as suggested by McAleenan. (ECF No. 31, p. 8). The definition of disability provided by the ADA specifically states that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C). While it is not disputed that Burns was capable of performing his job as a FTO (ECF No. 25-2, p. 8), the Court notes that working is just one of many major life activities. *See* 29 C.F.R. § 1630.2(i)(1)(i).

Construing all evidence in the light most favorable to Burns as the nonmoving party, the Court finds that a reasonable jury could find that Burns has a disability.

ii.    Regarded as Having a Disability

Alternatively, under the ADA, "a plaintiff may satisfy the first prong of the prima facie case—that he has a disability—by proving . . . that his employer regarded him as having an impairment." *Espinoza v. Brennan*, No. EP-14-CV-290-DB, 2016 WL 7176663, at *8 (W.D. Tex. Dec. 7, 2016) (citing 42 U.S.C. § 12102(1)(C)).

McAleenan asserts that Burns was not regarded as disabled. (ECF No. 31, p. 8). McAleenan further argues that the "request for medical documentation in order to assess whether [Burns] posed a direct threat to safety does not show Defendant treated or regarded [Burns] as disabled. (*Id.* at 11). To establish that he was regarded as disabled, Burns cites to Yrrobali's

deposition statements that Burns "operated a little slower sometimes when [migraines] hit." (ECF No. 26-1, p. 124); *see* (ECF No. 25, p. 17). Yrrobali also described a "cloudiness" on "those days where [Burns] would have migraines" and that Yrrobali "suffered from migraines as a child, so [he] kind of know[s] what the symptoms and signs are. And it is hard to focus and concentrate when you do have those." (*Id.*). In further support of Burns's contention that Yrrobali regarded Burns has having a disability, Burns points to the March 14 Email that "makes mention of medical issues, migraines, medical appointments, requests for leave, and effects of medication" as well as other statements contained in the email. (ECF No. 25, p. 17); *see* (ECF No. 26-2, p. 69) ("Burns has had multiple times leaving work or missing wo[r]k due to chronic migraines from what I have seen."). Finally, McAleenan agrees that it is [u]ndisputed that Yrrobali . . . knew of [Burns's] migraines." (ECF No. 32, p. 40).

Given the multiple statements from Yrrobali, about Burns's medical conditions and their effects, the Court finds that there is a genuine dispute of material fact as to whether Burns was regarded as disabled.

### B. Burns's Qualifications for the Job

The second element of the prima facie case of disability discrimination requires Burns to show that he was qualified for the job. *LHC*, 773 F.3d at 697. A plaintiff is a qualified individual when they are capable of "perform[ing] the essential functions of the job in spite of [his] disability or . . . [if] a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Id.* (quotation omitted); *see* 42 U.S.C. § 12111(8) (defining a qualified individual as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ."). McAleenan fails to argue that Burns is unqualified for his job as a FTO. Further, Burns points to multiple documents and deposition

statements addressing his qualifications for the job. (ECF No. 25, p. 18). Finally, McAleenan fails to object to Burns's contention that he was a good employee and one of the strongest climbers. *See* (ECF No. 32, p. 5). The Court finds that both parties agree that Burns is qualified for his job as a FTO.

## C.  Adverse Employment Action on Account of a Disability

The final element of the prima facie case of disability discrimination requires Burns to show "that he was subject to an adverse employment decision on account of his disability." *LHC*, 773 F.3d at 697.

The parties dispute whether adverse employment action was taken on account of Burns's disability. McAleenan asserts that Burns's claim "fails because there were no other similarly situated employees, in that no other employee had a safety concern brought to management's attention." (ECF No. 31, p. 13); *see* (ECF No. 32, p. 5). Burns alleges that he suffered an adverse employment action that "resulted in lost wages . . . ." (ECF No. 25, p. 18) In support of this contention, Burns argues that "as a result of the restriction on his climbing duties, Burns was [unable] to be recertified in 2016." (*Id*.). Finally, Burns contends that he was treated less favorably than similarly situated employees. (*Id*. at 18-19).[9] Despite McAleenan's argument that Burns cannot satisfy his prima facie case of disability discrimination because there were no other similarly situated employees, McAleenan affirmatively states both that Burns was first restricted from climbing on April 6, 2016, and that Burns was "ultimately restricted from climbing for 13 months." (ECF No. 22-1, p. 6).

---

[9] Perhaps because of the "discrepancy in the Fifth Circuit cases evaluating the requisite nexus between an employee's disability and her termination[,]" *LHC*, 773 F.3d at 695, both parties argue about comparable employees. *See* (ECF No. 31, p. 13); (ECF No. 25, p. 18-19). The *LHC* Court expressly rejected this fourth element because "it requires plaintiffs to prove causation twice" while also observing that the other circuits have overwhelmingly required plaintiffs to prove their termination was because of their disability rather than provide evidence of disfavored treatment or replacement." *LHC*, 773 F.3d at 695. Accordingly, the Court will not address comparable employees as an element of the prima facie case of disability discrimination.

When all of the evidence is construed in Burns's favor as the nonmoving party, the Court finds that Burns has satisfied the final element of a prima facie case of disability discrimination. Burns was prohibited from climbing towers because of concerns that medical issues may impair his ability to perform a portion of his duties. (ECF No. 26-2, p. 72). Burns asserts that this restriction resulted in loss of wages, losing out on overtime, job assignments, and hazardous pay. (ECF No. 26-1, p. 5); *see* (ECF No. 25, p. 17) ("It was based on these unjustified beliefs, that Yrrobbali restricted Burns' duties which caused him to lose pay, which is a prohibited action."). The Court finds that a reasonable jury could conclude that the restrictions on climbing and the resulting loss of pay were adverse employment actions based on Burns's disabilities.

While McAleenan asserts that the basis for the restrictions on climbing and the requests for medical documentation were based on safety concerns, the Court finds that Burns has established a prima facie case of disability discrimination.

## 2. Legitimate, Nondiscriminatory Reason

After a prima facie case of disability discrimination has been determined, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Delaval*, 824 F.3d at 479. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation omitted).[10]

McAleenan argues that it is "abundantly clear that the Defendant's actions were done in good faith and for the legitimate, nondiscriminatory reason of addressing employee safety

---

[10] "*Reeves* is a case concerning the Age Discrimination in Employment Act, 29 U.S.C. §§ 623 et seq. The *McDonnell Douglas* framework, however, is used in cases alleging discrimination under many different statutes, and courts regularly employ definitions and standards used in the *McDonnell Douglas* framework under multiple statutes. This circuit has not explicitly applied Reeves to a case arising under the ADA, but other circuits have done so." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, n. 6 (5th Cir. 2009).

concerns." (ECF No. 31, p. 16). In support of this position, McAleenan cites to the initiation of an investigation by Yrrobali into safety concerns after they were brought to his attention by Apodaca. (*Id*. at 15). McAleenan further references the consultation between Yrrobali and his supervisor Fernandez and with LER. (*Id*.). The specific safety concerns are identified in the March 14 Email from Yrrobali to Benn, including "the wellbeing of the RVSS FTO crew . . . if an emergency were to occur while on the tower.". (ECF No. 26-2, p. 69); *see also* (ECF No. 22-3, p. 30) ("Furthermore, as a matter of concern for your safety and of others, you will refrain from hazardous duty functions . . . .").

The Court finds that McAleenan's articulated reason of safety concerns is a legitimate, nondiscriminatory reason. *See Martin v. Bayland Inc.*, 181 F. App'x 422, 424 (5th Cir. 2006) ("The district court did not err in considering safety as one of [defendant's] legitimate, nondiscriminatory reasons.").

### 3.    Pretext

After a legitimate, nondiscriminatory reason is offered by the employer, the burden then shifts to the plaintiff to demonstrate that the offered reason is pretextual. *Delaval*, 824 F.3d at 479. In responding to a motion for summary judgment, "an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason . . . is pretextual." *Delaval*, 824 F.3d at 480. Further, pretext "is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." (*Id*.) (internal quotations omitted). Finally, "[e]vidence of pretext 'may take a variety of forms.'" *Robinson v. Jackson State Univ*., 714 Fed. App'x 354, 362 (5th Cir. 2017) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989)).

In considering pretext, the "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination and . . . no additional proof of discrimination is required." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (quotation and alteration omitted). Burns argues that the shifting explanations provided by Yrrobali for the requests within the three Letters, concluding with the requirement that Burns inform Yrrobali when he was taking his medications, demonstrates pretext. (ECF No. 25, p. 34). McAleenan counters that it is not a shifting explanation, and instead "is an alternative resolution of the concern of workplace safety." (ECF No. 32, p. 12). When construed in Burns's favor, a fact-finder could determine that a complete restriction on climbing towers imposed on Burns, pending medical documentation (ECF No. 26-2, p. 72), and later changed to simply requiring that Burns notify his supervisor that he had "taken the prescribed medication to make other work arrangements" (ECF No. 26-2, p. 93), is indeed a shifting explanation for the adverse employment decisions and the requests for medical documentation. Therefore, the Court finds that a reasonable jury could conclude that the changing requests regarding climbing restrictions and the scope of the medical documentation required are evidence of pretext.

Burns also argues that the contents of the March 14 Email demonstrates that Yrrobali's explanations for his decision have inconsistencies, incoherencies and contradictions. (ECF No. 25, p. 37-40). The March 14 Email was sent in response to a conversation Yrrobali had with his predecessor Apodaca about safety concerns that had been brought to Apodaca's attention. (*Id.*). Burns contends that the March 14 Email to Benn goes significantly beyond the scope of the concerns brought to Apodaca's attention and contains Yrrobali's generalized fears. (*Id.*). Burns asserts that while Yrrobali may have based his concerns on the information received from Apodaca, the implication of first-hand knowledge goes to the pretextual nature of the safety

concerns. (*Id*.). The inconsistencies between the information brought to Yrrobali's attention and the scope of his March 14 Email suggests that Yrrobali had some other source of information or basis for his decisions beyond what Apodaca brought to him and, therefore, raises a genuine dispute of material fact as to whether or not the articulated legitimate, nondiscriminatory reason of workplace safety for the employment decisions was pretextual.

Burns further contends that he was treated differently than other FTO's who are disabled. (ECF No. 25, p. 18). Burns alleges that he was the only FTO required to provide medical documentation before any safety incidents had occurred. (*Id*.). McAleenan responds that Burns was the only FTO about whom safety concerns were brought to the supervisor's attention. (ECF No. 32, p. 5). The parties dispute the scope of the concerns brought to Yrrobali's attention by Apodaca and whether the March 14 Email included Yrrobali's generalized fears. (ECF No. 25-2, p. 3). Resolving this factual dispute in Burns's favor as the non-moving party, the Court finds that a reasonable jury could conclude that McAleenan's articulated reason for the employment decisions is unworthy of credence.

Based on the foregoing, the Court **RECOMMENDS** that McAleenan's Motion should be **DENIED** with respect to Burns's claim of disability discrimination.

### b. Hostile Work Environment

Next, McAleenan argues that Burns cannot satisfy the elements of a hostile work environment claim. (ECF No. 31, p. 18). A hostile work environment claim under the ADA requires Burns to prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his disability or disabilities; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to

take prompt remedial action.  *Soledad*, 304 F.3d at 506 (quoting *Flowers v. S. Reg'l Physician Sers., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)).

The first, second, and fifth elements of a hostile work environment claim are not contested for the resolution of the instant Motion.  For purposes of resolving the Motion, McAleenan assumes that Burns belongs to a protected group and that the "three letters to Plaintiff relating to medical documentation were unwelcomed."  (ECF No. 31, p. 19).  These assumptions satisfy elements one and two of Burns's hostile work environment claim.  Further, Burns need not satisfy the fifth element of a hostile work environment claim because the harassment complained of was allegedly committed by Burns's supervisor Yrrobali.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) ("where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements . . . .") (abrogated on other grounds); *see* (ECF No. 31, p. 18).  Accordingly, the Court will only address the third and fourth elements of a hostile work environment claim .

### 1.    Harassment Based on Burns's Disability or Disabilities

McAleenan argues that the hostile work environment claim must fail as a matter of law because "the requests for medical documentation were based on safety concerns," which is a legitimate, nondiscriminatory reason, and not based on Burns's disability.  (ECF No. 31, p. 19).  Burns argues that the "two requests for medical information and the restrictions from climbing duties [were] based on Burns' disabilities . . . ."  (ECF No. 25, p. 27).  The April 6 Letter specifically mentions Burns's medical issues when it states that management had "become concerned with medical issues . . ." that Burns may have been experiencing.  (ECF No. 26-2, p. 72).  Further, Burns was restricted from tower climbing until medical documentation was provided

to evaluate his ability to perform the hazardous duty portion of his job. (*Id.*). Finally, the September 14 Letter, withdrawing the request for medical documentation and requiring Burns to inform Yrrobali immediately when Burns took his medications so that other work arrangements could be made, imposed a continuing obligation on Burns. (ECF No. 26-2, p. 93).

If the fact-finder were to reject McAleenan's assertion that the Letters and the restrictions imposed by the letters were based upon safety concerns, as addressed above, then the Court finds that a reasonable jury could conclude that the requests for medical documentation and restrictions on climbing were based on Burns's disability or disabilities.

### 2. Term, Condition, or Privilege of Employment

"In order for harassment to affect a term, condition or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)); *see* (ECF No. 31, p. 19). Further "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not suffice to alter the terms and conditions of employment." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Burns alleges that the three incidents of harassment are the April 6 Letter, the August 18 Letter, and the September 14 Letter, relating to medical documentation. (ECF No. 26-1, p. 18). Burns affirmatively indicated during his deposition that the harassment was "the . . . requirement to provide . . . documentation . . . ." (ECF No. 26-1, p. 18). Burns argues that the harassment resulted in loss of pay for thirteen months because he could not recertify as a climber. (ECF No. 25, p. 27). Further, Burns argues that the requirement to notify Yrrobali each time Burns took his

medications affected a term, condition, or privilege of his employment.  (*Id*.).  Burns alleges in his affidavit that the ongoing requirement to notify Yrrobali when Burns had taken his medication created a hostile work environment  (ECF No. 26-1, p. 4).  According to Burns, the third alleged act of harassment is the September 14 Letter that withdraws the request for additional medical documentation and imposes the ongoing obligation to notify Yrrobali when Burns takes his medication.  (ECF No. 25-2, p. 8).  Therefore, Burns's contention, that the ongoing obligation to notify Yrrobali when medication was taken created a hostile work environment, is not necessarily "contrary to [Burns's] testimony" as asserted by McAleenan.  (ECF No. 32, p. 20).   The Court finds that these letters, including the obligations and restrictions they imposed, could be found by a reasonable jury to affect a term of Burns's employment.

Accordingly, the Court finds that Burns has shown a genuine dispute of material fact as to whether or not the harassment alleged altered Burns's employment and created an abusive working environment. This genuine dispute of material fact as to whether the alleged incidents of harassment were sufficiently severe or pervasive enough to alter the conditions of Burns's employment and to create an abusive working environment prevent the granting of summary judgment on Burns's hostile work environment claim.

Based on the foregoing, the Court **RECOMMENDS** that McAleenan's Motion should be **DENIED** with respect to Burns's hostile work environment claim.

### c.    Retaliation

Burns alleges that he was retaliated against because of his opposition to the discriminatory and harassing requests for medical documentation.  (ECF No. 25, p. 32-33).  McAleenan asserts that there was no retaliation.  (ECF No. 31, p. 21).  Further, McAleenan argues that Burns's EEO complaint does not allege that any of the complained acts "constituted retaliation".  (ECF No. 31,

p. 22).  McAleenan also argues that Burns failed to exhaust his administrative remedies related to his claim of retaliation and, therefore, that Burns's claim is barred.  (*Id*. at 21-22).  Burns responds that the retaliation claim is related to the facts asserted in the EEO charge.  (ECF No. 25, p. 29).

In his initial DHS complaint dated September 30, 2016, Burns checked the box indicating that he believed the discriminatory actions were based on his physical or mental disabilities.  (ECF NO. 26-2, p. 97).  However, Burns failed to check the retaliation/reprisal box, directly below the disability box.  (*Id*.).  Further, the EEO Counselor's Report specifically references disability and harassment but makes no mention of retaliation.  (ECF No. 26-2, p. 142-44).  Finally, the Final Agency Decision specifically addresses disability and hostile work environment claims, but does not even mention concerns related to retaliation.  (ECF No. 22-5).

While "it is well established that the scope of an EEOC complaint should not be strictly interpreted[,] . . . the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (internal quotations and citations omitted).

Although unpublished and thus not binding authority, the Court finds *Miller v. Southwestern Bell Telephone Co.* particularly persuasive.  51 F. App'x 928, 2002 WL 31415083 (5th Cir. 2002); s*ee Carpenter v. Wal-Mart Stores, Inc.*, 614 F. Supp. 2d 745, 767 (W.D. La. 2008).  In *Miller*, the Fifth Circuit concluded "that because [the plaintiff] did not check the correct box on the EEOC complaint form or otherwise disclose his retaliation claim and thereby exhaust [his] administrative remedies, he [was] procedurally precluded from asserting a retaliation claim under the ADA."  *Miller*, 2002 WL 31415083 at * 8; *see Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018), reh'g denied (Feb. 20, 2018) ("'[F]ailure to fill in the appropriate

box in the filed charge' warrants summary judgment on exhaustion grounds only when 'coupled with the inability to describe the general nature of the claim in the narrative section of the charge'") (quoting *Miller*, 51 F. App'x 928 at * 7).

In this case, not only did Burns fail to check the retaliation box located directly below the disability box as a basis for his claim of discrimination, the narrative of discriminatory action also lacked any description of the general nature of a claim of retaliation (ECF No. 26-2, p. 97); (ECF No. 22-3, p. 38-39). Further, neither the EEO Counselor's Report (ECF No. 26-2, p. 142-44), nor the Final Agency Decision (ECF No. 22-5) provide even a hint of a claim of retaliation. Therefore, the Court agrees with McAleenan that Burns failed to exhaust his administrative remedies for a claim of retaliation.

Based on the foregoing, the Court **RECOMMENDS** that McAleenan's Motion should be **GRANTED** with respect to Burns's claim of retaliation.

### d.    Improper Medical Inquiry

In his Reply, McAleenan further argues that Burns's claim of improper medical inquiry fails as a matter of law. (ECF No. 32, p. 2). Before turning to the substance of a claim of improper medical inquiry, McAleenan asserts that Burns failed to exhaust his administrative remedies for improper medical inquiry and failed to argue improper medical inquiry in his complaint. (ECF NO. 32, p. 28).

### 1.    Exhaustion

McAleenan asserts that Burns "failed to timely raise his claim before the EEOC and thus failed to exhaust his administrative remedy to this claim." (ECF No. 32, p. 28). Further, McAleenan argues that Burns is now time-barred from beginning the administrative process to properly exhaust this claim. (*Id*.). Burns counters that the "Agency misinterprets Title I of the

ADA and argues that improper medical inquiry is a separate claim from disability discrimination."
(ECF No. 35, p. 3). Further, Burns contends that an improper medical inquiry claim "is properly
asserted as a claim for employment disability discrimination under the ADA and Rehabilitation
Act § 791." (*Id.*)

Burns is correct. "An unlawful medical inquiry by a public employer constitutes a form of
employment discrimination under the ADA." *Taylor v. City of Shreveport*, 798 F.3d 276, 282–83
(5th Cir. 2015). Further "the Rehabilitation Act incorporates many of Title I [of the ADA]'s
prohibitions on employment discrimination by reference, including [42 U.S.C.] § 12112(d)(4)(A)'s
medical inquiry prohibition." *Id.* at 283.

The Final Agency Decision related to Burns's EEO complaint specifically addressed
Burns's allegations that CBP "discriminated against [Burns] and subjected him to a hostile work
environment based on disability . . . ." (ECF No. 22-5, p. 3). The three claims identified in the
Final Agency Decision are all related to the requests for medical information. (*Id.*) According to
*Taylor*, improper medical inquiry "constitutes a form of employment discrimination under the
ADA." 798 F.3d at 282-83. Further the EEO complaint and Final Agency Decision addressed
Burns's allegation of discrimination based on disability. (ECF No. 22-5). Therefore, the Court
finds that Burns exhausted his administrative remedies related to his claim of discrimination.

## 2. Improper Medical Inquiry in the Complaint

McAleenan argues that Burns is "precluded from now asserting this [improper medical
inquiry] claim as he failed to include the claim in his Complaint." (ECF No. 32, p. 28-29). Burns
responds that his Complaint "provided fair notice of his claim for disability discrimination in the
form of an improper medical inquiry to the Agency." (ECF No. 35, p. 2).

In his Complaint, Burns specifically states that he will show that CBP violated "Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq*. ["ADA"] as amended by the ADA Amendments Act ("ADAAA") Public Law 110-325, and the Rehabilitation Act of 1973, as amended, Sections 501, et seq. . . . by harassing and requiring Burns to provide medical documentation based on a disability . . . ."  (ECF No. 1, p. 5).

Title 29 U.S.C. § 791(f) specifically references Title I of the ADA as the standard to employ to determine if employment discrimination has occurred, both of which are referenced in Burns's Complaint.  Further, Burns's Complaint specifically references requests for medical documentation.  "An unlawful medical inquiry by a public employer constitutes a form of employment discrimination under the ADA."  *Taylor*, 798 F.3d at 282–83.  Finally, "the Rehabilitation Act incorporates many of Title I [of the ADA]'s prohibitions on employment discrimination by reference."  *Id*. at 283.  The RA's incorporation of Title I of the ADA includes 42 U.S.C. "§ 12112(d)(4)(A)'s medical inquiry prohibition."  *Id*.  Therefore, the Court finds that Burns's Complaint alleged a claim of discrimination for improper medical inquiry in violation of the ADA and the RA.  *See Taylor*, 798 F.3d at 282-83.

### 3.    Discrimination Claim Based Upon Improper Medical Inquiry

The Fifth Circuit has held that "[a]n improper medical inquiry by a public employer constitutes a form of employment discrimination under the ADA."  *Taylor*, 798 F.3d 282-283.  Burns brings this action pursuant to 29 U.S.C. § 791.  In turn,  § 791(f) directs that the standards applied under Title I of the ADA are to be "used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination . . . ."  Burns further argues that his claim of improper medical inquiry "is properly asserted as a claim for employment disability discrimination under the ADA and the Rehabilitation Act § 791."  (ECF No. 35, p. 3).

McAleenan asserts that Yrrobali properly inquired into safety concerns. (ECF No. 32, p. 29) Burns argues McAleenan did not have a legitimate reason to request medical documentation. (ECF No. 35, p. 9). Given the above analysis under the *McDonnell Douglas* burden-shifting framework, the Court finds that a reasonable jury could conclude that Burns was discriminated against by being subjected to an improper medical inquiry.

Based on the foregoing, the Court **RECOMMENDS** that McAleenan's Motion should be **DENIED** with respect to Burns's claim of improper medical inquiry employment discrimination.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a genuine dispute of material fact exists for Burns's claims of discrimination under the ADA and the RA, and for Burns's hostile work environment claim. The Court further finds that Burns has failed to exhaust his administrative remedies as to his claim of retaliation.

Accordingly, the Court **RECOMMENDS** that "Defendant's Motion for Summary Judgment" (ECF No. 22), as substituted by "Defendant's Substituted Motion for Summary Judgment" (ECF No. 31), should be:

- **GRANTED** with respect to Burns's claim of retaliation;
- **DENIED** with respect to Burns's claims of discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act; and
- **DENIED** with respect to Burns's hostile work environment claim.

**SIGNED** and **ENTERED** this 19th day of August, 2019.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE</u>**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**