# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **JOSEPH L. BURNS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | EP-17-CV-00264-DCG |
| **KIRSTJEN NIELSEN,** *Secretary, U.S.* | § | |
| *Department of Homeland Security,* | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Chad F. Wolf's[1] ("Secretary") "Motion for Summary Judgment" (ECF No. 22), as substituted by his "Substituted Motion for Summary Judgment" (ECF No. 31). Also, before the Court is United States Magistrate Judge Anne T. Berton's Report and Recommendation (ECF No. 40) ("R&R") on the Secretary's motion. For the reasons that follow, the Court **ACCEPTS IN PART and REJECTS IN PART** the magistrate judge's R&R, and it **GRANTS IN PART and DENIES IN PART** the Secretary's motion.

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff Joseph L. Burns is a Field Technology Officer ("FTO") Telecommunications Specialist who began working for the United States Customs and Border Protection ("CBP") on

---

[1] Chad F. Wolf, Acting Secretary of the United States Department of Homeland Security, is the successor in office to Kirstjen Nielsen. Mr. Wolf was named Acting Secretary on November 13, 2019. In accordance with Federal Rules of Civil Procedure 25(b), Mr. Wolf is hereby automatically substituted as a party in this litigation for the previous officeholder.

[2] Because of the summary judgment stance, this recitation takes facts in the light most favorable to Burns. *Starnes v. Wallace*, 849 F.3d 627, 630 n.1 (5th Cir. 2017).

August 12, 2012.[3] As an FTO, Plaintiff is responsible for maintaining sensors and sensor repeaters, and assisting with other radio and video systems ("RVS").[4] FTO job duties include climbing tall ladders, RVS poles, water and radio towers.[5] FTOs receive "hazard pay" (additional 25% of base pay) for each day their duties require them to climb a tower.[6] When FTOs climb towers, they do so in teams of two; one of the duties of a tower climber is to rescue his partner in the event something happens to the partner.[7]

Burns has suffered from migraines since 1998 and from lumber spine puncture with back pain since 2002.[8] Throughout his employment with CBP, Burns has been capable of performing his job as an FTO, has not had any safety issues, and has never sought a reasonable accommodation.[9]

Marcus Yrrobali is Burns's current supervisor, and Richard Apodaca was his prior supervisor.[10] Prior to becoming Burns's supervisor in December 2015, Yrrobali was an FTO and Burns's colleague.[11] During Yrrobali's transition into his role as supervisor, Apodaca informed Yrrobali that some of Burns's co-workers had some concerns about Burns's migraine

---

[3] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 1, ECF no. 25-2.

[4] *Id.* ¶ 3.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 5.

[7] *Id.* ¶ 4.

[8] Def.'s Resp. to Pl.'s Proposed Undisputed Facts ¶ 6, ECF No. 32.

[9] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 52.

[10] *Id.* ¶ 7.

[11] *Id.* ¶¶ 8–9.

headaches.[12] Prior to Yrrobali's transition, Apodaca and Yrrobali each knew that Burns suffered from migraine headaches.[13] According to Apodaca, the co-workers' safety concerns were brought to his attention by his then secretary, Jeanie Molinar.[14] Molinar, who has since retired, disputes Apodaca's account.[15] Yrrobali did not confirm with Molinar or any other employee about who had raised the concerns.[16] None of Burns's RVS team members stated that they ever reported any concerns to Apodaca or Molinar regarding Burns.[17]

Yrrobali sought guidance from his supervisor, Victor Fernandez, on how to address the safety concerns Apodaca brought to his attention.[18] Fernandez directed Yrrobali to seek guidance from Maria Benn with CBP's Labor and Employee Relations (LER).[19] LER specialists, such as Benn, are the human resource specialist for CBP.[20]

On March 14, 2016, Yrrobali sent an email to Benn regarding his safety concerns, and those Apodaca brought to his attention, about Burns ("March 14, 2016 email").[21] The parties dispute whether some of Yrrobali's statements in the email are false and the sources wherefrom Yrrobali implicitly claimed to have learned the information he provides in the email about Burns.

---

[12] *Id.* ¶ 10; *see also* Def.'s Ex. 6 at 5, ECF No. 22-8.

[13] Def.'s Ex. 2 at 13, ECF No. 22-4; Def.'s Ex. 6 at 9.

[14] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 11.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 18.

[17] Def.'s Resp. to Pl.'s Proposed Undisputed Facts ¶ 34,

[18] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 12.

[19] *Id.* ¶ 15.

[20] *Id.* ¶ 16.

[21] Pl.'s 2nd Set of Exs. at 69, ECF No. 26-2.

In response, Benn advised Yrrobali to prohibit Burns from climbing until Burns provided medical documentation regarding his medical conditions and medications.[22]

On April 6, 2016, Yrrobali issued a letter to Burns (hereinafter, the first letter or April 6, 2016 letter), restricting him from climbing until Burns submitted medical documentation from his physicians.[23] The letter asked Burns's physician to provide a litany of information on, *inter alia*, diagnosis of Burns's conditions and impairments, the impact they were having on his life activities, and whether he was "a danger to yourself or others."[24] The stated purpose of the letter was to evaluate Burns's ability to perform the hazardous duty portion (tower climbing) of your official duties of a telecommunications specialist.[25]

On April 27, 2016, Burns provided Yrrobali a letter from Dr. Robbie Rampy.[26] In his letter, Dr. Rampy's stated that Burns has chronic migraine headaches and degenerative disc disease of the lumbar spine. He stated: "Some of his medications can cause drowsiness[,] and it is not recommended that he climb a tower when he is drowsy." In addition, Rampy stated that while Burns did not appear to be a danger to himself or others, but because Rampy is not a behavioral health specialist, he could not comment, without resorting to speculation.

LER forwarded Dr. Rampy's letter to CBP's Medical Fitness Branch (MBF), which, upon review, informed Benn on May 5, 2016, that the letter was inadequate to determine if Burns could safely resume his hazardous duties and further recommended a request for

---

[22] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 20; Pl.'s 2nd Set of Exs. at 72.

[23] Pl.'s 2nd Set of Exs. at 72–73.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 75.

additional information while continuing to restrict Burns to nonhazardous duties.[27] On August 22, 2016, Yrrobali issued a second letter to Burns (hereinafter, the second letter or August 22, 2016 letter), informing Burns that Dr. Rampy's letter was insufficient and requesting additional medical information.[28] The letter requested description of Burns's current medical status and use of sedating medications; and an opinion on whether his medical conditions and medications are likely to impede his ability to engage in hazardous activities, such as climbing heights, crouching/crawling, and so on.

After receiving the second letter, Burns sought informal Equal Employment Opportunity (EEO) counseling in late August 2016.[29] In early September 2016, Burns and Yrrobali discussed the possibility of Burns continuing to inform his team when he could not climb, as he had done since 2012, as a possible resolution to the ongoing requests for medical documentation.[30] The parties dispute whether Burns also suggested that he inform Yrrobali when he has taken his medications and could not climb.[31]

On September 14, 2016, after consultation with Benn and Fernandez, Yrrobali served Burns a third letter (hereinafter, the third letter or September 14, 2016 letter), rescinding the second letter's requests for additional medical documentation. It instead prohibited Burns from climbing when he has taken the prescribed medications Dr. Rampy referenced in his letter.[32] It

---

[27] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 30.

[28] *Id.* ¶ 32; Pl.'s 2nd Set of Exs. at 89.

[29] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 34.

[30] *See id.* ¶ 35.

[31] *Id.*

[32] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 37. Pl.'s 2nd Set of Exs. at 93.

further instructed Burns to immediately notify his supervisor when he has taken such medications.

On September 22, 2016, CBP notified Burns of the conclusion of the EEO counseling and his right to file an EEO complaint.[33] On September 30, 2016, Burns filed a formal EEO complaint of discrimination.[34] On May 26, 2017, the Department of Homeland Security's Office for Civil Rights and Civil Liberties issued its Final Agency Decision on his administrative complaint.[35]

## B. Procedural Background

On August 24, 2017, Burns brought the instant lawsuit against the Secretary. In his judicial complaint, he alleges that the CBP violated § 501 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 791, "by harassing and requiring Burns to provide medical documentation based on a disability while other 0391 Telecommunications Specialist are not required to provide medical documentation." Compl. ¶ 12, ECF No. 1.

On April 4, 2019, the Secretary filed his "Motion for Summary Judgment," seeking summary judgment on all of Burns's claims, and on May 31, 2019, the Secretary filed his "Substituted Motion for Summary Judgment." The briefing on the motion was completed on June 21, 2019. In July 2019, the Court referred the Secretary's motion to United States Magistrate Judge Anne T. Berton for a report and recommendation to the Court pursuant to 28 U.S.C. § 636(b)(1)(B). In August 2019, the magistrate judge issued her R&R, wherein, she recommended that the Secretary's motion be granted in part and denied in part. In September

---

[33] Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 39.

[34] *Id.* ¶ 40.

[35] Def.'s Ex. 3, ECF No. 22-5.

2019, the Secretary filed his written objections to the R&R. Def.'s Objs. to R&R, ECF No. 43. Burns did not file any objection to the R&R.

## II. STANDARD

### A. Standard for Reviewing Report and Recommendations

When a party files timely written objections to a magistrate judge's report and recommendation, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); *United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de novo* determination,' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."). After completing its review of the report, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

As to other portions—that is, the unobjected-to portions—of the magistrate judge's report or when a party does not file written objections, the district judge applies a "clearly erroneous, abuse of discretion and contrary to law" standard of review. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). A finding "is clearly erroneous if the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

## B. Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted). Instead, the court "only 'give[s] credence to the evidence favoring the nonmovant [and] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (second alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301,

303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

## III. DISCUSSION

The magistrate judge recommended granting the Secretary's motion for summary as to Burns's retaliation claim, concluding that Burns failed to exhaust administrative remedies for such a claim. R&R at 23, ECF No. 40. No objection was filed against that recommendation. Finding that the magistrate judge's findings and conclusions were not clearly erroneous and contrary to law, the Court accepts the magistrate's recommendation on the retaliation claim.

As to Burns's (A) improper medical inquiry claim, (B) disability discrimination claim, and (C) hostile work environment claim, the magistrate judge recommended that the Secretary's motion be denied. The Secretary objects. Below, the Court addresses each claim, in turn.

### A. Improper medical Inquiry Claim

The RA incorporates by reference many of the prohibitions on employment discrimination of Title I of the Americans with Disabilities Act ("ADA"), including [42 U.S.C.] § 12112(d)(4)(A)'s medical inquiry prohibition. *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015). Section 12112(d)(4)(A) provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

A plaintiff, however, need not establish that he has a disability to prevail on a claim for an improper medical inquiry under this ADA provision. *Taylor*, 798 F.3d at 284; *see also Williams v. FedEx Corp. Servs*, 849 F.3d 889, 901 (10th Cir. 2017) ("The provision applies to all employees, and a plaintiff need not prove that he is disabled.").

Before addressing the merits of Burns's medical inquiry claim, the Court addresses two procedural matters. The magistrate judge found that (a) Burns's Complaint alleged a claim for improper medical inquiry, *id.* at 25, and (b) Burns exhausted his administrative remedies on his medical inquiry claim, R&R at 24. The Secretary objects to these findings. Def.'s Objs. to R&R at 16. Below, the Court addresses each in turn.

### 1. *Procedural Matters*

#### (a) Failure to Plead in Complaint

The Secretary argues that Burns failed to include the improper medical inquiry claim in his Complaint, and therefore, this claim should be dismissed. Def.'s Reply to MSJ at 28–29, ECF No. 32; *see also* Def.'s Objs. to R&R at 16 ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (quoting *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005))).

In his Complaint, Burns claims that the CBP violated the RA by, among others, "requiring Burns to provide medical documentation based on a disability while other 0391 Telecommunications Specialist are not required to provide medical documentation." Compl. ¶ 12. On its face, this allegation suggests a disparate treatment claim for requesting medical

information on the basis of disability. The Court briefly pauses here to address the nature of such a claim and how it relates to § 12112(d)(4)(A).

Such a disparate treatment claim is properly brought under 42 U.S.C. § 12112(d)(1), a different subsection that provides that "[t]he prohibition against discrimination as referred to in subsection (a) [*i.e.*, 42 U.S.C. § 12112(a)] shall include medical examinations and inquiries."[36] Thus, an improper medical examination or inquiry "may constitute a form of employment discrimination under the ADA." *Taylor*, 798 F.3d at 282 (citing § 12112(d)(1)); *see also Fredenburg v. Contra Costa Cty. Dept. of Health Servs.*, 172 F.3d 1176, 1181 (9th Cir. 1999) ("Subsection (d)(1) provides a general prohibition against using medical examinations to discriminate; subsections (d)(2) through (d)(4) provide more detailed guidelines as to what is and is not allowed."); *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1213 (11th Cir. 2010) ("[O]ne way a disabled plaintiff could meet his prima facie case of discrimination [under § 12112(d)(1)] would be by showing that his employer discriminated against him by . . . making a[n] . . . improper medical inquiry in violation of subsection (d)[,]" which includes, among others, § 12112(d)(4)(A).).[37]

Therefore, an employer may be liable for making medical inquiries directed at its employees under either § 12112(d)(4)(A) or § 12112(d)(1). Whereas § 12112(d)(4)(A) does not

---

[36] *See also* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

[37] *See also Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 4–5 (5th Cir. 2018) (finding that the employer's return-to-work medical inquiry pursuant to its general policy was proper under the ADA, and further finding no pretext because "[t]here is no evidence that the policy was applied differently as to [the employee], such as his being made to provide more information than were others" on the basis of the employee's disability).

require plaintiff to assert that he "has a disability to contest an allegedly improper medical inquiry or medical examination," *Taylor*, 798 F.3d at 284, § 12112(d)(1) does, *Harrison*, 593 F.3d at 1213 ("[B]ecause § 12112(d)(1) expressly incorporates § 12112(a)'s prohibition of discrimination against 'qualified individuals [on the basis of] disabilit[y],' . . . to maintain an action for discrimination itself, a plaintiff must be disabled under the ADA.").

With that background on the relevant statutory provisions, the Court returns to Burns's Complaint. Burns also alleges that on April 6, 2016, he was issued a letter requesting medical documentation to evaluate his ability to climb, and after Burns provided a letter from his doctor, Burns was issued a second letter stating that the doctor's letter was insufficient and requesting additional medical information. Compl. ¶¶ 8–9. These factual allegations, together with his statement of claim, Claim ¶ 12, gave "fair notice" to the Secretary that Burns also sought relief under § 12112(d)(4)(A), and "his allegations, which specifically referred to . . . medical inquiries, were more than speculative." *Harrison*, 593 F.3d at 1214–15; *see also Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 854 (5th Cir. 2018) ("It bears emphasizing that factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon which the plaintiff seeks relief."); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory[,]" or provide "an exposition of his legal argument."); *cf. Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). The Court holds that Burns alleged a claim for improper medical inquiry under § 12112(d)(4)(A).

## (b) Failure to Exhaust

Next, the Secretary argues that Plaintiff's improper medical inquiry claim falls outside the scope of the EEO investigation, and therefore, it should be dismissed for failure to exhaust administrative remedies. Def. Reply to MSJ at 28.

"[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274–75 (5th Cir. 2008) (internal quotes omitted). A "lawsuit may include allegations like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* at 273 (alterations and internal quotes omitted). "[T]his court construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotes omitted).

In his EEO charge, Burns stated that he was "required to *provide medical documentation* based on a disability while other 0391 Telecommunications Specialist are not required to provide medical documentation." Def.'s Ex. 1 at 39 (emphasis added), ECF No. 22-3. He listed the dates of all three Yrrobali letters (two of which requested medical documentation) as the dates on which discriminatory actions occurred. Therefore, liberally construing Burns's EEO charge, an investigation into an improper medical inquiry claim under § 12112(d)(4)(A) would reasonably be expected to grow out of the charge. This reading of the charge "is confirmed by the actual scope of the EEO[]'s investigation, which is clearly pertinent to an exhaustion inquiry." *McClain*, 519 F.3d at 274. Although the Final Agency Decision did not separately analyze an improper medical inquiry claim, it did analyze the business necessity defense to a § 12112(d)(4)(A) claim. Def.'s Ex. 3 at 8 (citing 29 C.F.R. § 1630.14(c)). In other words, the

EEO investigated a claim under § 12112(d)(4)(A). The Court therefore concludes that as to

Burns's improper medical inquiry claim under § 12112(d)(4)(A), exhaustion was satisfied.

## 2. *Merits of the Improper Medical Inquiry Claim*[38]

### (a) Prima Facie Case

A plaintiff asserting a claim under § 12112(d)(4)(A) "must show (1) that he is an

employee of the defendant-employer, and (2) that the defendant-employer required him to

undergo a medical examination or made a disability-related inquiry of him." *Williams*, 849 F.3d

at 901. A medical inquiry is disability-related, and therefore, is sufficient to trigger the

---

[38] The Court notes that the parties, as well as the magistrate judge, analyzed Burns's § 12112(d)(4)(A) improper medical inquiry claim under the burden shifting *McDonnell-Douglas* framework. As one district court noted:

> The ADA provision on prohibited inquiries, however, stands alone so that a prohibited inquiry in and of itself may be a violation. *See* 42 U.S.C. § 12112(d)(4)(A) . . . . Consequently, a prohibited inquiry claim, unlike a general discrimination claim, does not necessarily implicate the analysis . . . of legitimate nondiscriminatory reasons and the possibility that they are pretextual.

*Gonzales v. Sandoval Cty.*, 2 F. Supp. 2d 1442, 1445 (D.N.M. 1998); *accord Fountain v. New York State Dept. of Corr. Servs.*, 190 F. Supp. 2d 335, 339 (N.D.N.Y. 2002) ("A prohibited inquiry claim does not necessitate the same analysis of legitimate non-pretextual reasons for the inquiry that a general discrimination claim would."), *aff'd in part, vacated in part on other grounds sub nom. Conroy v. New York State Dept. of Corr. Serv.*, 333 F.3d 88 (2d Cir. 2003); *see also Harrison v. Benchmark Elecs., Inc.*, No. CV-07-J-815-NE, 2008 WL 11379974, at *7 n.11 (N.D. Ala. Oct. 16, 2008) ("Although argued by the plaintiff, none of the cases the court has found concerning medical inquiries in violation of the ADA apply the burden shifting McDonnell Douglas framework."), *rev'd on other grounds sub nom. Harrison*, 593 F.3d 1206.

Insofar as § 12112(d)(4)(A) applies whether or not a plaintiff has a disability, *Taylor*, 798 F.3d at 284, and further that whether a medical inquiry was "job-related and consistent with business necessity" is an "objective" inquiry that does not turn on the decisionmaker's "subjective motivations" for requesting the medial information, *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019), the Court agrees with these courts and declines to apply the *McDonnell-Douglas* burden-shifting framework in ruling on the merits of Burns's stand-alone claim for improper medical inquiry under § 12112(d)(4)(A).

protection under Title I of the ADA (and by extension, § 501 of the RA), if the inquiry "may tend to reveal an employee's disability." *Conroy*, 333 F.3d at 95 (ADA Title I case).[39]

Here, in the April 6, 2006 letter, Yrrobali asked Burns's physician to provide, *inter alia*, diagnosis of Burns's conditions and impairments, and further, the impact they have on his life activities, both on and off the job. Pl.'s 2nd Set of Exhibits at 72. In the August 22, 2006 letter, Yrrobali asked Burns's physician to provide a description of Burns's use of sedating medication, and his opinion as to whether Burns's medical conditions and use of sedating medications are likely to impede his ability to engage in physical activities including, but not limited to, climbing, crouching, and carrying. *Id.* at 89. A reasonable jury could conclude that the information requested in these letters would tend to reveal Burns's disability. The Court concludes that Burns had made out a prima facie case on his improper medical inquiry claim.

### (b) Business Necessity

"Even if the plaintiff makes the required showing, the employer may avoid liability by demonstrating that the medical examination or disability-related inquiry was job-related and consistent with business necessity." *Williams*, 849 F.3d at 901. "Business necessity is an affirmative defense"; therefore, the employer bears the burden of demonstrating business necessity. *Taylor*, 798 F.3d at 286; *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010). Whether the medical inquiry was "job-related and consistent with business necessity" is an "objective" inquiry. *Hannah P.*, 916 F.3d at 339; *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 518 (3d Cir. 2001); *Brownfield*, 612 F.3d at 1146. The Court "therefore do[es] not resolve

---

[39] *See also Taylor*, 798 F.3d at 284–85 (implicitly approving *Conroy*'s test for an ADA Title I claim for improper medical inquiry brought, by reference, under § 501 of the RA, but for such a claim brought, by reference, under § 504 of the RA, stating "an inquiry into an employee's medical condition violates [§ 504 of] the [RA] only if it is 'intended to reveal or necessitates revealing a disability'" because the causation standard under § 504, unlike that under § 501, is "*solely* on the basis of disability" (quoting *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 255 (6th Cir. 2011))).

any dispute about what [Yrrobali's] subjective motivations were" for the medical inquiry. *Hannah P.*, 916 F.3d at 339.

"'[T]he business necessity standard is quite high, and is not to be confused with mere expediency.'" *Conroy*, 333 F.3d at 97 (alterations omitted) (quoting *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001)). "[T]he individual who decides to [make the medical inquiry] must have a reasonable belief based on objective evidence that the employee's behavior threatens a vital function of the business." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014).

According to the Secretary, Yrrobali's requests for medical information were consistent with business necessity because in so requesting, Yrrobali was addressing safety concerns brought to him by a fellow supervisor, *i.e.*, Apodaca, relating to Burns's ability to safely perform tower climbing. Def.'s Reply to MSJ at 30; *see also Conroy*, 333 F.3d at 97 ("[B]usiness necessities may include ensuring that the workplace is safe and secure.").

An employer may make disability-related inquiries based on information learned from another person, "if the information learned is *reliable* and would give rise to a *reasonable belief* that the employee's ability to perform essential job functions will be impaired by a medical condition or that s/he will pose a direct threat due to a medical condition." Equal Employment Opportunity Comm'n, Enforcement Guidance: Disability-Related Inquiries & Medical Examinations of Employees Under the Americans With Disabilities Act (ADA) (2000), 2000 WL 33407181, at *8 [hereinafter, the EEOC Guidance]; *see also Diggs*, 742 F. App'x at 3–4 (approvingly citing to the EEOC Guidance for other propositions).

Apodaca testified in his deposition that Molinar, then his secretary, told him that "some of the guys have some concerns about [Burns's] headache." Def.'s Ex. 6 at 5. In turn, Apodaca

-16-

relayed this information to Yrrobali, *id.*; Def.'s Ex. 2 at 14 ("[Apodaca] mentioned, 'I do need to bring to your attention that it has been voiced to me that there is some worry about Mr. Burns.")  (testimony of Yrrobali)—which, according to the Secretary, formed the basis of his belief that Burns presented safety concerns. Apodaca assumed those "guys" were the ones who climb towers with Burns. Def.'s Ex. 6 at 5.

As Burns points out, Molinar in her deposition denied that she ever reported any safety concerns about Burns to Apodaca. Def.'s Ex. 9 at 5, ECF No 22-9; *see also* Pl.'s Resp. to MSJ at 38, ECF No. 25. She further denied having any conversation with any of Burns's team members regarding safety concerns about Burns. Def.'s Ex. 9 at 5 ("To the best of my recollection, I don't think anybody ever had concern about [Burns and safety]."). The record reflects that Yrrobali never asked Molinar, Burns, or any of his co-workers about the alleged safety concerns. Pl.'s Statement of Facts ¶ 34, ECF No. 25-3. Moreover, the record does not reflect that Burns ever had any safety incidents while climbing towers in the past.

Consequently, there exists a genuine dispute about whether Yrrobali's requests for medical information were consistent with business necessity, precluding summary judgment.

**B. Disparate Treatment Disability Discrimination Claim**

Burns' disparate treatment theory appears to be that CBP discriminated against him on the basis of his disability by making the improper medical inquiry and by simultaneously restricting him from climbing towers that resulted in loss of wages. Compl. ¶ 12; *see also* Pl.'s Resp. to MSJ at 18 ("The CBP's actions resulted in lost wages for Burns."); *id.* ("None of the other FTO's are required to provide medical documentation . . . ."). As discussed, *see* Part III.A.1(a), *supra*, the Court understands Burns to proceed under 42 U.S.C. § 12112(d)(1).

For a disparate treatment disability discrimination claim, the standard for determining liability under § 501 of the RA[40] is the same as that under Title I of the ADA.[41] 29 U.S.C. § 791(f); *Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008). Under Title I of the ADA, a plaintiff alleging disability discrimination can either provide direct evidence of the discrimination or rely on the *McDonnell-Douglas*[42] burden-shifting framework. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Here, Burns is proceeding under *McDonnell-Douglas*. Under the framework, the plaintiff must first establish a *prima facie* case of disability discrimination. *See id.* If he is successful, then the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *See id.* Finally, the burden shifts back to the plaintiff to show that CBP's proffered reason is pretext for discrimination. *See id.* "Under the ADA, 'discrimination need not be the sole reason for the adverse employment decision so long as it actually plays a role in the employer's decision making process and has a determinative influence on the outcome.'" *Id.* at 696 (alterations omitted) (quoting *Pinkerton*, 529 F.3d at 519)); *see also Pinkerton*, 529 F.3d at 516 ("[T]he § 501 causation standard and the ADA [causation] standard . . . are equivalent[.]").

---

[40] Whereas § 504 of the RA expressly prohibits an employer who is a recipient of federal funds from "discriminat[ing]" against an "otherwise qualified individual with a disability," 29 U.S.C. § 794(a), § 501 of the RA, by its literal wording, merely requires federal agencies to "submit . . . an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities," 29 U.S.C. § 791(b). "[T]he 1978 amendments to the [RA] . . . extended section 504's proscription against [disability] employment discrimination to cover the activities of the federal government itself," and thereby "established a private right of action, subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act, in favor of section 501 claimants," *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. Unit A Nov. 1981); *see also de la Torres v. Bolger*, 781 F.2d 1134, 1135 n.1 (5th Cir. 1986) ("The Fifth Circuit has held that both sections 501 and 504 provide for a private cause of action against the federal government for handicap discrimination.").

[41] Title I of the ADA prohibits a private employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a).

[42] 411 U.S. 792 (1973).

The Secretary objects to the magistrate judge's findings that Burns has established a prima facie case of disability discrimination, R&R at 15; Def.'s Objs. to R&R at 3, and that a reasonable jury could conclude that the Secretary's articulated reason for the employment decisions is pretextual, R&R at 15, 18; Def.'s Objs. to R&R at 3, 4.

### 1. Prima Facie Case

To establish a prima facie discrimination claim under the ADA and by extension, under § 501 of the Rehabilitation Act, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability, *i.e.*, there was a "causal nexus," *i.e.*, "causal connection," between the adverse employment action and his disability. *LHC Grp., Inc.*, 773 F.3d at 695, 697, 699 (brackets and internal quotes omitted) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)); *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (citing *LHC Grp., Inc.*, 773 F.3d at 697). For purposes of the summary judgment motion, the Secretary assumes that Burns satisfies the second element. *See* Substituted MSJ at 11, n. 5, ECF No. 31 The Court therefore turns to the first and third elements.

### (a) Disability

As relevant here, the ADA defines "disability," as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual,"[43] 42 U.S.C. § 12102(1)(A) (actual disability), and alternatively, as "being regarded as having such an

---

[43] Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The inquiry . . . is . . . whether [Burns's] impairment substantially limits his ability 'to perform a major life activity as compared to most people in the general population.'" *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 591 (5th Cir. 2016) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

impairment,"[44] 42 U.S.C. § 12102(1)(C) (regarded-as disability); *see also* 29 U.S.C. § 705(9)(B) (The RA incorporates by references the ADA's definition of disability); *id.* § 705(20)(B) (same). Burns claims that his migraine headaches qualify as disability under both subsections (A) and (C) and his lumbar spine puncture with back pain qualifies as disability under subsection (A). Pl.'s Resp. to MSJ at 12, 14, 16.

### (i) Actual Disability

The magistrate judge concluded that a reasonable jury could find that Burns's migraine headaches and lumbar spine puncture with back pain each constitutes actual disability. R&R at 12. The Secretary points out that the Veterans Administration's ("VA") disability designation is done for purposes of the federal government's hiring preferences, not for purposes of determining "disability" under the RA. *See* Def.'s Objs. to R&R at 3; *see also* Def.'s Reply to MSJ at 5. He then argues that other than his VA designation, Burns has not been diagnosed as "disabled" by any other medical provider. Def.'s Objs. to R&R at 3; *but see Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) ("While the doctor's use of the term 'disabled' is not unusual, especially in the context of disability insurance, it is not an accurate definition for the purposes of the ADA. . . . If there has ever been a legal term of art, 'disabled' certainly qualifies."). In other words, the Secretary's argument is that Burns needed, but has failed, to adduce evidence of his disabilities from a medical provider.

---

[44] A plaintiff is "regarded as" being disabled if he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The plaintiff need not "show that the employer regarded him . . . as being substantially limited in a major life activity," but "need only show that [his] employer perceived [him] as having an impairment and that it discriminated against her on that basis." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (internal quotes omitted).

To be sure, "[t]he [VA] ratings[] . . . are assessed pursuant to a standard entirely different from that imposed by the [RA] (which incorporates the ADA standards), and are therefore insufficient to create a genuine issue of fact that Plaintiff is disabled under the [RA]." *Mosley v. Potter*, No. H-08-484, 2009 WL 3672830, at *4 & n.27 (S.D. Tex. Nov. 2, 2009) (collecting illustrative cases). Contrary to the Secretary's argument, however, the record does include a letter from Dr. Rampy, Burns's doctor, wherein the doctor states that Burns "has degenerative disc disease of the lumbar spine and chronic migraine headaches." Pl.'s 2nd Set of Exs. 75. That letter is probative on the existence of Burns's impairments[45] that form the basis of his "disabil[ities]" under the ADA. Moreover, as the magistrate judge correctly observed, Burns does not simply refer to his medical diagnosis to prove his disability, he also adduced other evidence, *see, e.g.*, Pl.'s 1st Set of Exs. at 2, ¶¶ 2–3; Pl.'s 2nd Set of Exs. at 58, 61, 63, 67, 75, to demonstrate how his migraines and back pain limited multiple major life activities. R&R at 11–12. The Secretary does not dispute this additional evidence the magistrate judge relied on it reaching his conclusion. The Court concludes that that Burns has raised a genuine dispute of material fact as to whether he is actually disabled.

**(i) Regarded-As Disability**

The magistrate judge concluded that there is a fact dispute as to whether Burns's migraine was regarded-as disability, R&R at 13. The Secretary advances two arguments in objecting to that conclusion.

First, he argues that while Yrrobali was aware that Burns had migraine and would take leave accordingly, that does not show that Yrrobali was "aware of any disability." Def.'s Objs. to R&R at 3–4 (citing Yrrobali's testimony that "I didn't know of his disabilities, per se[.]"). The

---

[45] A qualifying "impairment" includes "[a]ny physiological disorder or condition" that affects, among other body systems, neurological and musculoskeletal systems. 29 C.F.R. § 1630.2(h).

ADA Amendments Act of 2008 ("ADAAA") "overrule[d] prior authority requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (internal quotes and citation omitted). Under the ADAAA's definition of regarded-as disability, Burns "need only show that [his] employer perceived [him] as having an impairment and that it discriminated against her on that basis." *Id.*

The Secretary does not otherwise dispute other evidence relied on by the magistrate judge. R&R at 12–13. Under a similar set of evidence, the Fifth Circuit panel in *Burton* rejected the employer's argument that it was "not aware [the employee] had a disability" and found "no shortage of contrary evidence." *Burton*, 798 F.3d at 230–31 (evidence included, *inter alia*, decisionmaker's testimony that he learned of the employee's job-related injury; evidence that decisionmaker was aware she received medical treatment for the injury; decisionmaker's email to the employee's immediate supervisor discussing how to handle health-related absences by the employee; supervisors' e-mails discussing employee's health condition and referencing her need "to sit down for a bit," "chest pains," and trouble breathing).

Next, the Secretary argues—for the first time—that Burns has not pleaded that his migraines are "not transitory." Def.'s Objs. to R&R at 3. The ADA provides that "impairments that are transitory and minor" cannot form the basis of regarded-as disability. 42 U.S.C. § 12102(3)(B); *see also id.* ("A transitory impairment is an impairment with an actual or expected duration of 6 months or less."). However, "the 'transitory and minor' exception is an affirmative defense, and 'as such, the employer bears the burden of establishing the defense.'" *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 435 (9th Cir. 2018) (quoting 29 C.F.R. § 1630.2(l) and § 1630.15(f)); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019)

(holding same). Consequently, Burns, as the plaintiff, is under no obligation to plead against a possible affirmative defense.[46] The Court concludes that there is a fact dispute as to whether Burns was regarded-as disabled.

### (b) Nexus: Adverse employment decision on account of disability

The Secretary objects to the magistrate judge's finding that a reasonable jury could conclude that the restrictions on tower climbing and the resulting loss of pay were adverse employment actions based on Burns's disability. Burns argues, and the Secretary does not dispute, that the CBP's actions resulted in loss of wages for Burns, in the form of, among others, lost wages for tower climbing duties.[47] Def.'s Resp. to Pl.'s PUF ¶ 11. The parties however dispute whether there is a causal nexus between the adverse employment action and his disability. *See* Pl.'s Resp. to MSJ at 14; Def.'s Reply to MSJ at 5–6.

Burns argues that he was required to provide medical documentation because Yrrobali had generalized fears about his migraine, his prescribed medications, and doctor's visits. Pl.'s Resp. to MSJ at 19. Yrrobali testified he was aware that "there were a lot of incidences where [Burns] would have *incapacitating* migraines," and that Burns took medications for his migraines. Def.'s Ex. 2 at 21 (emphasis added), ECF No. 22-4. In the March 14, 2016 email to Benn, Yrrobali made several subjective statements about Burns's migraine headaches: for

---

[46] *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) ("A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense."); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("[P]laintiffs are not required to negate an affirmative defense in their complaint." (alterations and internal quotes omitted)); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised.").

[47] Pl.'s 2nd Set of Exs. at 72 ("Furthermore, as a matter of concern for your safety and of others, you will refrain from hazardous duty functions (Tower Climbing) pending response from your physician(s)/practitioner(s).") (April 6, 2016 letter from Yrrobali to Burns); *id.* at 69 ("I ask this due to the fact that this will affect his pay since our climbers receive 25% of their base pay extra for each day they climb.") (March 14, 2016 email from Yrrobali to Benn).

example, he wrote that the safety concerns about Burns were due to his condition, the medication he takes, and the side-effects from the medications that might be affecting his capacity to work, demeanor, memory, and mental judgment while on the towers. Pl.'s 2nd Set of Exs. at 69. In Yrrobali's first letter requesting medical information, Yrrobali asked for diagnosis of his conditions and impairments, what impacts those impairments were having on his life activities, and specific accommodation that would be effective for his medical conditions. *Id.* at 72.

Construing all of the evidence in a light most favorable to Burns, the Court finds that a reasonable jury could conclude that Yrrobali sought medical information and restricted his climbing on the account of his disability.[48] *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 282 (5th Cir. 2000) (holding a jury could conclude that the plaintiff "was terminated because his employer regarded him as disabled," where the plaintiff testified that he was a disabled employee with an outstanding performance record and he "was terminated as a direct consequence of the *symptoms of his disability.*" (emphasis added)).

In sum, the Court concludes that Burns had made out a prima facie case on his disability discrimination claim.

### 2. Pretext

The Secretary argues that in requesting medication information from Burns's physician and restricting Burns from climbing towers pending the receipt of the information, Yrrobali was "addressing employee safety concerns." Substituted MSJ at 16; *see also* Def.'s Reply to MSJ at 2 ("Defendant sought to evaluate whether Plaintiff could perform the hazardous duty of his job

---

[48] Because Burns has carried his burden on the nexus element, the Court does not address the Secretary's other argument that Burns fails to show that he was treated less favorably than other employees, because he does not identify any other FTO who suffers from migraine or back issues. Def.'s Reply to MSJ at 5–6; *see also* Def.'s Objs. to R&R at 12. "[O]ne possible way to prove nexus" is to show that the plaintiff "was treated less favorably than non-disabled employees." *LHC Grp., Inc.*, 773 F.3d at 696 (emphasis added) (citing and discussing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997)).

(Tower Climbing) while ensuring safety for himself or others."). The magistrate judge concluded that the Secretary satisfied its burden of production to show a legitimate, nondiscriminatory reason. R&R at 15–16 (citing *Martin v. Bayland Inc.*, 181 F. App'x 422, 424 (5th Cir. 2006) ("The district court did not err in considering safety as one of [defendant's] legitimate, nondiscriminatory reasons.")). No objection was made to this conclusion.

Since the Secretary offered a legitimate reason, the burden of production shifts to Burns to show that the Secretary's proffered reason was pretext for discrimination. "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "At summary judgment, evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Rodriguez*, 820 F.3d at 765 (alteration and internal quotes omitted).

Burns argues that the Secretary provides "shifting explanation[s]" about its reason. Pl.'s Resp. to MSJ at 35. In support of that assertion, Burns points out that on August 18, 2018, Yrrobali requested additional information from Burns's doctor, but on September 14, 2016, Yrrobali rescinded that request—even though, up to this point, the CBP had not received the information it requested. *Id.* ("This begs the question . . . why would they rescind the requests?"). "[A] court may infer pretext where an employer has provided inconsistent or conflicting explanations for its conduct." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 (5th Cir. 2017) (internal quotes omitted). Contrary to Burns's argument, the Secretary's articulated reason remained consistent all throughout. *See e.g.*, Pl.'s 2nd Set of Exs. at 69

(Yrrobali's March 14, 2016 email to Benn); *id.* at 72 (Yrrobali's first letter seeking medical information); *id.* at 106 (Yrrobali's statement to the EEO counselor).

Nevertheless, the record also reflects that Yrrobali rescinded the prior letter—two weeks after Burns made the initial contact with the EEO counselor, Pl.'s 2nd Set of Exs. at 142, and he did so against Benn's recommendation, Pl.'s 1st Set of Exs. at 169, ECF No. 26-1. A reasonable jury could infer from this additional evidence that Yrrobali was "dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134 (2000); *see also Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (internal quotes omitted)).

Next, as a further evidence of pretext, Burns points out that Molinar denied that she ever reported any safety concerns to Apodaca and further denied having any conversation with any of Burns's team members regarding safety concerns about Burns. Pl's Resp. to MSJ at 38. As discussed *supra* in Part IIIA.2(b), Apodaca testified that Molinar told him that "some of the guys have some concerns about [Burns's] headache[s]," Def.'s Ex. 6 at 5, which he relayed to Yrrobali. According to Yrroabli, he and Apodaca collaborated in assessing whether there was any safety concern about Burns. Def.'s Ex. 2 at 19. To show pretext, Burns must produce evidence demonstrating that Yrrobali or Apodaca "did not in good faith believe" what Molinar allegedly said to Apodaca, "but relied on them in a bad faith pretext to discriminate against him on the basis of his [disability]." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993). Because there is a fact dispute as to whether Molinar ever said to Apodaca what he

claims she said, there is at least a fact dispute as to whether Apodaca acted in a bad faith pretext for discrimination.

In sum, the Court concludes that Burns's evidence of pretext, taken together with his prima facie case, is sufficient to create a jury issue of whether the Secretary's proffered reason was pretext for discrimination. At trial, "live testimony will assist the necessary credibility choices in this case more effectively than printed [on the deposition transcripts]." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988). The Court concludes that the Secretary's motion for summary judgment as to Burns's disparate treatment disability discrimination claim should be denied.

## C. Hostile Work Environment Claim

To prevail on a disability-based hostile work environment claim under the RA, the plaintiff must prove:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir. 2002) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001) (extending Title VII hostile work environment jurisprudence to disability-based hostile work environment claims under the ADA)).

"The legal standard for workplace harassment in this circuit is . . . high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). In particular, to satisfy the fourth element, the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment. *Flowers*, 247 F.3d at 236; *Lauderdale v. Texas Dept. of Criminal*

*Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (Title VII). More, the alleged harassment must have created a work environment that would have been perceived as hostile or abusive by a reasonable employee. *Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 797 (5th Cir. 2017); *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (Title VII). Whether a reasonable employee would perceive the environment as hostile or abusive should be evaluated by looking at "the totality of the circumstances," including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 299 (5th Cir. 2001) (Title VII).

Burns complains of the following incidents as the basis of his hostile work environment claim: (1) the first letter requesting medical information from Burns's doctor; (2) the second letter requesting additional information in response to Dr. Rampy's letter Burns provided in response to Yrrobali's first letter; and (3) the third letter wherein Yrrobali rescinded the requests in the second letter, instructed Burns not to climb towers when he takes medications his doctor referenced and further instructed him to notify Yrrobali when he takes those medications so that other work arrangements could be made. Pl.'s Resp. to MSJ at 26. These incidents occurred over a period of approximately five months: from April 6, 2016, to September 14, 2016.

Considering against the record as a whole and drawing all inferences in favor of Burns, the Court finds that the complained-of conduct "is not the type that courts have found to constitute harassment, and certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment." *Credeur*, 860 F.3d at 796. Yrrobali's actions in requesting medical information simply were not harassment. *See Molden v. E. Baton Rouge Par. Sch. Bd.*,

715 F. App'x 310, 317–18 (5th Cir. 2017) ("[A]sking for further medical information . . . does not compare to the level of hostility that the employee in *Flowers*[, 247 F.3d 229,] faced"); *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 n.15 (3d Cir. 2015) ("The record shows Archie asked for medical documentation twice between May 2010 and November 2010. No reasonable juror would find these requests by a new manager over a seven-month period to constitute a change in employment conditions."). Further, Yrrobali's instructions in his third letter were issued in view of the recommendation by Burns's doctor that "[s]ome of his medications can cause drowsiness and it is not recommended that he climb a tower when he is drowsy." Pl.'s 2nd Set of Exs. at 75. No reasonable employee could perceive those instructions unreasonably interfered with his work performance. Those instructions, like Yrrobali's requests for medical information, do not constitute harassment.

Burns argues that Yrrobali's actions resulted in loss of pay, and therefore altered the conditions of his employment. Pl.'s Resp. to MSJ at 27. However, "the critical question is whether the altered conditions of her employment created an abusive work environment." *Credeur*, 860 F.3d at 797. "It is . . . significant that none of [Yrrobali's] actions were 'physically threatening or humiliating' or 'even offensive.'" *Id.* at 796 (citing *Flowers*, 247 F.3d at 236). To the contrary, Burns testified that even after issuing the first letter, Yrrobali continued to maintain a "professional" relationship with him, and there were "no issues" between them. Def.'s Ex. 1 at 20. Yrrobali recommended good performance ratings and awards for Burns, and no disciplinary actions were taken against him. *Id.* at 20–21. There is also no evidence of any intimidation, ridicule, and insult against Burns—much less evidence of any "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In sum, there is no basis upon which a reasonable jury could find in Burns's favor on his hostile work environment claim. The Court therefore concludes that the Secretary is entitled to summary judgment as to the hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Magistrate Judge Anne T. Berton's Report and Recommendation (ECF No. 40) is **ACCEPTED IN PART and REJECTED IN PART.**

**IT IS FURTHER ORDERED** that the Secretary's Motion for Summary Judgment" (ECF No. 22), as substituted by "Substituted Motion for Summary Judgment" (ECF No. 31), is **GRANTED IN PART and DENIED IN PART.** The motion is **GRANTED** as to Burns's retaliation claim and hostile work environment claim and is **DENIED** as to Burns's improper medical inquiry claim and disparate treatment disability discrimination claim. Burns's retaliation and hostile work environment claims are **DISMISSED.**

**So ORDERED and SIGNED this** 28ᵗᵉ **day of January 2020.**

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE