## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **JOSEPH L. BURNS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-17-CV-00264-DCG** |
| **KIRSTJEN NIELSEN,** *Secretary, U.S.* | § | |
| *Department of Homeland Security*, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER
## REGARDING ATTORNEY FEES AND COSTS

Presently before the Court is Plaintiff Joseph L. Burns's (Plaintiff or Burns) "Motion for Attorney Fees and Costs" (ECF No. 116).  For the reasons that follow, the Court GRANTS the motion in part.

## I.   BACKGROUND

In August 2017, Burns, an employee of the U.S. Customs and Border Protection (Agency), brought this lawsuit against Defendant Alejandro Mayorkas[1] (Defendant or Secretary) for the Agency's violations of § 501 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 791, and in turn, for violations of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq.*  At the summary judgment stage, Burns pursued five claims: two disability (actual and regarded-as) discrimination claims, a disability-based hostile work environment claim, a retaliation claim, and an improper medical inquiry claim.  In August 2019, United States Magistrate Judge Anne Berton recommended that the Secretary's motion for

---

[1] Alejandro Mayorkas, the Secretary of the United States Department of Homeland Security, is the successor in office to Chad F. Wolf, who in turn was the successor to Kirstjen Nielsen, who in turn was the successor to John F. Kelly, who was initially named as the defendant on Plaintiff's Original Complaint (ECF No. 1) filed in 2017.  Mr. Mayorkas was sworn in as the Secretary on February 2, 2021. In accordance with Federal Rules of Civil Procedure 25(b), Mr. Mayorkas is hereby automatically substituted as a party in this litigation for the previous officeholders.

summary judgment be granted in part and Burns's retaliation claim be dismissed for failure to exhaust administrative remedies, R&R at 23, ECF No. 40; Burns did not object to her recommendations.  On January 28, 2020, the Court adopted in part the magistrate's recommendations, dismissing the retaliation claim and further dismissed the hostile work environment claim; the Court allowed Burns's disability discrimination and improper medical inquiry claims to proceed to trial.  *Burns v. Nielsen*, 456 F. Supp. 3d 807, 831 (W.D. Tex. 2020) (hereinafter, *Burns MSJ Op.*).

Following jury selection on February 3, 2020, the liability phase of the trial began on February 4 and concluded on February 7; the jury found for Burns on each of his three claims.  On February 10, 2020, the damages phase of the trial was held; the jury awarded Burns $125,000 as past emotional damages.  In accordance with the parties' stipulation on back pay in the amount of $3,068.56 and the jury verdict, the Court entered final judgment on February 25, 2020, awarding Burns $128,068.56.

On March 10, 2020, Burns filed the instant motion for fees and costs (ECF No. 116).  The parties' briefing on the motion was completed by June 25, 2020.  *See* Def. Resp., ECF No. 124; Pl.'s Reply, ECF No. 129.  In the meantime, the Secretary filed a renewed motion for judgment as a matter of law, or in the alternative, motion for a new trial or remittitur (ECF No. 119).[2]  The Court granted in part the Secretary's motions and remitted the jury's award for emotional damages to $90,000.  *Burns v. Nielsen*, No. EP-17-CV-00264-DCG, 2020 WL 7223922, at *1 (W.D. Tex. Dec. 8, 2020) (hereinafter, *Burns JMOL Op.*).  In December 2020, the Court entered an amended judgment, awarding Burns $93,068.56.

---

[2] Shortly thereafter, the Secretary appealed from the final judgment, *see* Notice of Appeal, ECF No. 123; that appeal is currently pending at the Fifth Circuit.

## II.   DISCUSSION

By his motion, Burns argues that as a prevailing party under § 501 of the RA, 29 U.S.C. § 791, he is entitled to reasonable attorney's fees as part of the costs.  Pl.'s Mot. for Att'y Fees & Costs at 1–2, ECF No. 116.  He moves for a fee award in the range of $425,000 to $500,000 and seeks to recover $5,036.05 in costs.  *Id.* at 1, 9–10.  In response, the Secretary does not address whether Burns is a prevailing party, but he does challenge the reasonableness of the requested fee amount and asks the Court to deny in part Burns's motion as to the amount by applying appropriate reductions.  Def.'s Resp. at 1, 18, ECF No. 124.  The Secretary likewise does not address Burns's request for costs.

The RA authorizes the court, in its discretion, to "allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  29 U.S.C. § 794a(b).[3]  Under a traditional prevailing-party fees provision,[4] "[t]o qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement."  *Walker v. City of Mesquite, TX*, 313 F.3d 246, 249 (5th Cir. 2002) (citing *Farrar v. Hobby*, 506 U.S. 103, 111–123 (1992)).  Under this standard, Burns qualifies as a prevailing party in this case because the Court

---

[3] *See also* 29 U.S.C. § 794a(a)(1) ("The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)) . . . , shall be available, with respect to any complaint under section 791 of this title, to any employee . . . aggrieved by the final disposition of such complaint . . . ."); 42 U.S.C. 2000e-5(k) ("In any action . . . under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and . . . the United States shall be liable for costs the same as a private person."); 42 U.S.C. § 12205 (ADA provision) ("In any action . . . commenced pursuant to this chapter, the court . . . , in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.").

[4] Although the Secretary does not address Burns's averment that he is a prevailing party, the Court, out of an abundance of caution, briefly addresses his prevailing-party status.

has entered a judgement for $93,068.56 against the Secretary and in Burns's favor. *See Genesis Marine, L.L.C. of Delaware v. Hornbeck Offshore Servs., L.L.C.*, 951 F.3d 629, 632 (5th Cir. 2020) ("Under this definition, [plaintiff] has prevailed. It has obtained a judgment for $722,346.35 that materially alters the relationship between the parties and places [defendant] in [plaintiff]'s debt.").[5] Further, the Court finds that no "special circumstances" exist here to justify denial of fees to Burns.[6]

Next, the Court determines the appropriate amount of "reasonable attorney's fee." 29 U.S.C. § 794a(b). In the Fifth Circuit, courts must apply a two-step method for determining a reasonable fee award. *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017). "First, they calculate the lodestar, which is equal to the numbers of hours reasonably expended multiplied by

---

[5] *See also Farrar*, 506 U.S. at 113 ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.").

[6] Under §794a(b), as under other prevailing-party fee-shifting statutes including 42 U.S.C. § 1988, "'a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Sanchez v. City of Austin*, 774 F.3d 873, 879–80 (5th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *see also Hensley*, 461 U.S. at 433 n.7 (The same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"); *Davis v. Credit Bureau of South*, 908 F.3d 972, 976–77 (5th Cir. 2018) ([W]e have acknowledged the viability that 'special circumstances' can justify a decision not to award fees in similar contexts."); *Shelton v. Louisiana State*, 919 F.3d 325, 328 (5th Cir. 2019) ("The ADA's fee-shifting provision[, 42 U.S.C. § 12205] is interpreted under the same legal standard as the similar provision in 42 U.S.C. § 1988."); *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) ("In cases under the above statutes[, *inter alia*, 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b)], the governing principles and procedures are essentially the same.").

The Fifth Circuit has identified two types of cases in which full denial of fees have been upheld: (1) cases in which the plaintiff filed the lawsuit "to recover what was essentially a tort claim for private monetary damages" and (2) cases in which "even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results." *Grisham v. City of Fort Worth, Tex.*, 837 F.3d 564, 568–69 (5th Cir. 2016) (internal quotes and citations omitted); *see also Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."); *Sanchez*, 774 F.3d at 880 ("The special-circumstances exception is a *narrow* carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees." (emphasis added)).

the prevailing hourly rate in the community for similar work." *Id.* (internal quotes omitted).[7]

The fee applicant bears the burden of demonstrating that the hours expended and the rates

charged by counsel are reasonable. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th

Cir. 1996). "Second, the court should consider whether to decrease or enhance the lodestar

based on the *Johnson* factors." *Portillo*, 872 F.3d at 741 (citing *Johnson v. Georgia Highway

Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard

v. Bergeron*, 489 U.S. 87 (1989)).[8]  The fee applicant also "bears the burden of showing that . . .

an [upward] adjustment is *necessary*." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d

761, 771 (5th Cir. 1996) (italics in original; internal quotes and citation omitted).

## A.  This Was Not a Complex Case

Before embarking on the lodestar analysis, the Court considers the nature of the case.

*Alvarez v. McCarthy*, No. 6-16-CV-00172-ADA, 2020 WL 1677715, at *2 (W.D. Tex. Apr. 6,

2020) (considering "the simplicity of the case and the issues involved in conducting [the]

lodestar analysis"); *see also id.* ("This *Johnson* factor ('novelty and difficulty of issues' in the

case) has a bearing on the market rate and on whether the hours were reasonably spent and may

be a basis for adjusting the lodestar.").  Here, this was not a complex case, and it presented no

novel issue; nor was it an unusually contentious case.

Although at the summary judgment stage, Burns pursued a total of five discrete claims,

the case was ultimately tried on three claims: actual and regarded-as disability discrimination

---

[7] *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The calculation requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended.").

[8] *See also Payne v. Univ. of S. Mississippi*, 681 F. App'x 384, 390–91 (5th Cir. 2017) ("District courts are required to *consider* the *Johnson* factors, but have discretion whether to adjust the amount of fees based on those factors." (emphasis in original) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 330 (5th Cir. 1995))).

claims, 42 U.S.C. § 12112(a), and improper medical inquiry claim, 42 U.S.C. § 12112(d)(4).  In

effect, however, this was a single-claim trial insofar as it was based on the same facts but three

different theories.  To elaborate, the two discrimination claims were run-of-the-mill claims, and

the Secretary did not pursue any affirmative defense.  These claims differed primarily by the

disability element (actual versus regarded-as).  The evidence in support of a critical element,

which is common to both claims—*i.e.*, whether the Agency discriminated against Burns because

of his disability—was identical for both.  *See Burns JMOL Op.*, 2020 WL 7223922, at *15–*19;

*see also* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 34–41 (discussing together "pretext" for all

claims), ECF No. 25.  A significant portion of the evidence to prove discrimination was

documentary such as emails and letters; among them, were two letters the Agency issued to

Burns seeking medical information and restricting his tower climbing duties; and an e-mail from

Burns's supervisor (Markus Yrrobali) to the Agency's human resource specialist (Maria Benn)

that led to the issuance of those letters.  At trial, Burns had to persuade the jury whether

discriminatory intent could be inferred from Yrrobali's email.  *Burns JMOL Op.*, 2020 WL

7223922, at 19.[9]  As for the medical inquiry claim, to meet his burden of proof, Burns needed

only the Agency's letters seeking medical information from Burns, and the Secretary's

affirmative defense of "business necessity" turned on "[m]uch of the evidence" that supported

the jury's finding of discrimination.  *Id.* at 21.

The entire trial, which was bifurcated, lasted approximately 27 hours spanning over six

days.  Following jury selection, which lasted for half a day on February 3, 2020, the liability

phase of the trial was held on February 4-7.  Of nine trial witnesses, seven gave live testimony.

---

[9] *See also Burns JMOL Op.*, 2020 WL 7223922, at *16 n.90 ("In their closing arguments during
the liability phase of the trial, counsel for Burns argued that 'that March e-mail is exaggeration or
fabrication, one of those two' and that 'the medical document demand provided to Mr. Burns was wholly
based on a March 14th e-mail with personal fears and subjective motivations of Mr. Yrrobali." (brackets
and ellipses omitted)).

The remaining two witnesses, including a critical one (Barbara Molinar), were not called to give live testimony; instead, their deposition testimony was presented by readers. The damages phase of the trial (which was held on February 10, 2020) lasted approximately 45 minutes, including closing arguments, and Burns was the only witness who testified on damages.

Finally, this case involved no significant discovery dispute (as reflected by the fact that no discovery motion was filed). Other than the Secretary's summary judgment motion, motion in limine, and posttrial motions for judgment as a matter of law or a new trial—no substantive motion was filed. No expert witness was used for any proceedings.

## B. Hourly Rates

Burns requests an hourly rate of $300-$400 for Mr. Baeza and a rate of $450-$550 for Mr. Martinez. Pl.'s Mot. for Att'y Fees & Costs at 2. The Secretary contests the reasonableness of the requested rates and suggests hourly rates of $175 and $200, respectively, for Mr. Baeza and Mr. Martinez. Def.'s Resp. at 16.

"The reasonableness of an attorney's hourly rate 'depends on the experience and qualifications of the professional.'" *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 934 (W.D. Tex. 2012) (quoting *Trs. of Chi. Plastering Inst. Pension Trust v. Cook Plastering Co*., 570 F.3d 890, 905 (7th Cir. 2009)). "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market," *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000), "for attorneys of similar experience in similar cases," *Shipes v. Trinity Indus*., 987 F.2d 311, 319 (5th Cir. 1993), but not according to "the rates that lions at the bar may command," *Hopwood*, 236 F.3d at 281 (internal quotes and citation omitted). The relevant market is "the community in which the district court sits," here, the El Paso County. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (same). The burden is on Burns "to produce satisfactory evidence, in

addition to [his] attorney's affidavit, that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).  "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368.

According to their affidavits, counsel are practitioners of a small law firm, located in El Paso.  Baeza Aff. at 1, ECF No. 116-1; *id.*, Ex. A; *see also* Martinez Aff. at 1, ECF No. 116-2; *id.*, Ex. A.  The firm employs two full-time attorneys—being themselves; Mr. Martinez, who founded the law firm, is a partner, and Mr. Baeza appears to be an associate.  As of the date of this motion, Mr. Bazea had been practicing employment law for five years, and Mr. Martinez for twenty years.  Mr. Martinez declares that his own standard hourly rate for clients who are able to pay fees for services rendered on an hourly basis is $350.00.[10]  Mr. Baeza provided no comparable information about his regular rate.[11]  Further, counsel declare that the requested rates are consistent with the rates in El Paso County, Texas.  Burns did not submit any affidavit by "other" attorneys.  *See Tollett*, 285 F.3d at 368, *supra*.[12]

---

[10] Martinez Aff. at 3.

[11] *See La. Power & Light Co.*, 50 F.3d at 328 ("To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates.").

[12] *Cf. Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (faulting the fee applicant for "ma[king] no effort to show what his services are worth in Houston," the relevant community in that case).

Burns points to two fee decisions issued in employment discrimination cases by courts sitting in this community;[13] neither is helpful.  In the first decision, an hourly rate of $300 was found to be reasonable for an attorney with sixteen years of experience—because of defendant's "concessions."  *Jackson v. Host Int'l, Inc*., No. EP-08-CA-112-FM, 2009 WL 10669466, at *2 (W.D. Tex. Dec. 21, 2009) (Montalvo, J.), *aff'd*, 426 F. App'x 215 (5th Cir. 2011).  As the Fifth Circuit, on appeal from that case, observed, before the district court, "[n]ot only did [the defendant] not object to this figure, . . . it abandoned its position that the rate should be $225 per hour and expressly stated that it did not object to the $300 per hour rate."  *Jackson*, 426 F. App'x at 226.  Consequently, *Jackson* is unhelpful.  *See Tollett*, 285 F.3d at 369 ("We question that $300 is a reasonable hourly rate.  But, only because the [defendant] has not contested it, we hold that, based on [the plaintiff's] counsel's affidavit, the reasonable hourly rate is $300.").

The other is a Texas trial court decision, where, according to Mr. Baeza, in April 2018, the court awarded fees based on an hourly rate of $300 for Mr. Baeza and an hourly rate of $350 for Mr. Martinez.  Baeza Aff. at 3 (discussing *Guzman v. Ysleta Indep. Sch. Dist*., No. 2017DCV1412 (243rd Dist. Ct., El Paso County, Tex.)).  Counsel did not submit any court document that sheds light on that court's reasoning behind approving such rates or whether the requested rates were uncontested.  Moreover, the Court observes that according to a brief filed on appeal from that decision, which appears to be pending before the Texas Eighth Court of Appeals, the defendant does not contest the rates.  *See* Appellant's Br., *Ysleta Indep. Sch. Dist. v. Guzman*, No. 08-18-00115-CV, 2018 WL 6065403, at *33–35 (Tex. App.—El Paso Nov. 6, 2018).  Consequently, the state court's ruling too is unhelpful.

---

[13] Burns submitted a "chart" listing attorney rates that courts across Texas have approved in awarding fees.  As the Secretary points out, only two of the fee rulings listed on the chart were made by an El Paso area court and therefore, are relevant to prevailing rates in this community.

The Court's research reveals two recent decisions issued in employment law cases, where the judges of the El Paso Division of the Western District of Texas have determined hourly rates, absent any concession by a party opposing the rate requested.  In *Rocha v. Balfour Beatty Military Hous. Mgmt., LLC*, the court found that an hourly rate of $300 was reasonable for an attorney with more than twenty years of experience.  No. EP-16-CV-358-DB, 2017 WL 10774806, at *1 (W.D. Tex. Apr. 10, 2017) (awarding fees on a motion remand to state court in a case involving state-law anti-discrimination claims).  In *Acosta v. Campos*, the court found that an hourly rate of $250 was reasonable for an attorney with seven years of experience.  No. EP-14-CV-160-PRM, 2014 WL 10178598, at *8 (W.D. Tex. Dec. 17, 2014) (awarding fees on a default judgment on a claim involving FLSA violations), *amended*, 2015 WL 1758125, at *6 (W.D. Tex. Apr. 17, 2015) (adopting the same rate latter at the summary judgment stage).[14]

The Court looks to the State Bar of Texas's "2015 Hourly Rate Fact Sheet"[15] (which reports the result of a survey of hourly rates charged by Texas attorneys in 2015) for additional guidance.  *See Miller v. Raytheon* Co., 716 F.3d 138, 149 (5th Cir. 2013) (stating that district court was entitled to rely on state bar surveys in determining reasonable hourly rates).  According to the State Bar Fact Sheet, in the El Paso metropolitan area, in 2015, the median hourly rate for a labor and employment attorney was $205; and the median hourly rate for an

---

[14] *See also* Welch Declr., at ¶¶ 3, 10 (counsel having seven years of experience), *Acosta*, No. EP-14-CV-160-PRM (W.D. Tex. Dec. 9, 2014), ECF No. 137-4.

[15] State Bar of Texas, *2015 Hourly Rate Fact Sheet* (Aug. 2016) [hereinafter Fact Sheet], *at* https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182 (Last visited on Feb. 1, 2021).  It is the most recent such report published by the state bar. The Secretary submitted a copy of the State Bar Fact Sheet.  Def.'s Resp., Ex. C, ECF No. 124-4.

attorney with 3-6 years of experience was $175, and the same for an attorney with 16-20 years was $225.[16]

The Secretary points out that as recently as in May 2019, Mr. Martinez testified (through his affidavit) before another forum that "the rate of $300 per hour" for his time "is certainly reasonable and consistent with the 'market rate' in El Paso County, Texas." Def.'s Resp., Ex. D, Attach 1 at 12 & n.2, ECF No. 124-6. Mr. Martinez testified to the same effect, requesting the same rate, in 2015 and 2017 as well. *Id.*, Ex. D, Attach 3 at 16 & n.2, ECF No. 124-8; *id.*, Ex. D, Attach 4 at 8, ECF No. 124-9.

Considering the above evidence and that the degree of expertise needed in this case was relatively low because it was not a complex case and it did not involve any novel issue, *see* Part II(A), *ante*—in light of the rates approved in *Rocha*, 2009 WL 10669466, at *2, *supra*, and *Acosta*, 2014 WL 10178598, at *8, *supra*, and the Court's knowledge of prevailing market rates in the El Paso area,[17] the Court finds that an hourly rate of $250 is reasonable for Mr. Martinez. Likewise, the Court finds that an hourly rate of $185 is reasonable for Mr. Baeza who has considerably less experience than Mr. Martinez.[18]

## C.  Hours Expended

"In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 392

---

[16] *Id.* at 10, 12.

[17] *See Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) ("A district judge may consider his or her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." (internal quotation marks omitted)); *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978) ("The court, either trial or appellate, is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees."); *cf. League of United Latin Am. Citizens No. 4552 (LULAC)*, 119 F.3d at 1234 (5th Cir. 1997) ("The hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate.").

[18] *Cf.* State Bar Fact Sheet at iv ("Rates increase as attorneys obtain more experience.").

(5th Cir. 2016) (brackets, internal quotes, and citation omitted).  A "district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*."  *La. Power & Light Co.*, 50 F.3d at 324 (emphasis in original).[19]  Further, fee applicants "take their chances in submitting fee requests containing block-billed entries and will have no cause to complain if a district court reduces the amount requested on this basis."  *DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017); *see also Davis v. Perry*, 991 F. Supp. 2d 809, 836 (W.D. Tex. 2014) ("Courts have approved across-the-board reductions in block-billed hours to offset the effects of block billing."), *rev'd on other grounds*, 781 F.3d 207 (5th Cir. 2015).[20]  In addition, fee applicants "are charged. . . with proving that they exercised billing judgment."  *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  To carry their burden of establishing entitlement to an award, fee applicants "must, of course, submit appropriate documentation," *Fox v. Vice*, 563 U.S. 826, 838 (2011)—"namely, time records, affidavits, and the like," *Alvarez*, 2020 WL 1677715, at *2.

Burns claims that his counsel expended a total of 990.10 hours: Counsel Jonathan Baeza 670.95 hours and Counsel Raymond Martinez 319.15 hours.  Pl.'s Mot. for Att'y Fees & Costs at 3–4.  In support of the fee motion, counsel submitted affidavits together with their billing record, which contains approximately 500 entries.  Baeza Aff., Ex. B; Martinez Aff., Ex. B.  The Secretary asks the Court to reduce the number of hours because of excessiveness, vagueness,

---

[19] In this Circuit, the standard for the requisite specificity of billing entries is negatively defied as "not illuminating as to the subject matter" or "vague as to precisely what was done," which "gives the district court sufficient leeway within which to *accept or reject* fee applications."  *La. Power & Light Co.*, 50 F.3d at 326–27.  "Litigants take their chances when submitting . . . fee applications[ that] provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision."  *Id.* at 327.

[20] *DeLeon*, 687 F. App'x at 346 n.4 ("Block-billing" is the method of "billing multiple discrete tasks under a single time designation.").

block billing, charges for unsuccessful claims, charges for clerical activities, and counsel's failure to exercise billing judgment.  Def.'s Resp. at 5–12.

As a preliminary matter, the Court agrees with the Secretary that Burns's counsel failed to exercise billing judgment.  For one, such failure is suggested by the sheer number of hours (990.10) claimed.  In employment discrimination cases involving one to two claims, a few of which are cited in the footnote below,[21] courts have found 88 to 595 attorney hours (with a median at 253 hours) were reasonably expended.  Burns thus claims nearly four times the median number of hours and twice the maximum number courts have approved in these cases.

For another, "[b]illing judgment requires *documentation* of the hours charged and *of the hours written off* as unproductive, excessive, or redundant."  *Saizan*, 448 F.3d at 799 (emphasis added).  This, counsel failed to do here: "the billing record[] [is] completely devoid of any hours written off."  *Leroy v. City of Houston*, 831 F.2d 576, 586 n.15 (5th Cir. 1987).  Burns however replies that counsel did not list any time their legal assistant and secretary worked in drafting and

---

[21] *See, e.g.*, *Alvarez*, 2020 WL 1677715 (362 hours; Title VII retaliation claim tried to jury over two days); *Williams v. Shinseki*, No. 3:11-CV-0761-D, 2013 WL 1875055, at *7 (N.D. Tex. May 6, 2013) (88 hours; Title VII retaliation claim tried to jury over four days); *Miles-Hickman v. David Powers Homes, Inc*., No. CIV.A. H-07-0754, 2009 WL 995632, at *6 (S.D. Tex. Apr. 14, 2009) (243 hours; four claims, including an ADA retaliation claim, tried to jury over 5 days); *Edwards v. Aaron Rents, Inc*., 482 F. Supp. 2d 803, 812 (W.D. Tex. 2006) (358.9 hours; a gender discrimination claim for violation of the Texas Commission on Human Rights Act tried to jury over 3 days; retaliation claim dismissed at the summary judgment stage); *Halupka v. Federal Express Corp*., No. 4:03-cv-350, 2006 WL 8441053, at *4 (E.D. Tex. Jun. 22, 2006) (595 attorney hours and 130 paralegal hours before applying additional percentage deduction pursuant to the *Johnson* factors; §1981 racial discrimination and hostile work environment claims tried to jury over 5 days); *Downey v. Strain*, No. CIV.A. 04-2593-SS, 2006 WL 1581234, at *5 (E.D. La. June 5, 2006) (149 hours; a Title VII gender discrimination claim and an FMLA claim tried to jury over 2 days); *White v. Irene's Cuisine, Inc*., No. CIV.A. 01-3912, 2003 WL 22077801, at *4 (E.D. La. Sept. 5, 2003) (119 hours; ADA disability discrimination and retaliation claims tried to jury over 2 days); *Dibler v. Metwest, Inc*., No. 3:95-CV-1046-BC, 1997 WL 222910, at *6 (N.D. Tex. Apr. 29, 1997) (263 hours for an ADA discrimination claim tried to jury over 5 days); *see also Dinet v. Hydril Co*., No. CIV.A.05-3778, 2006 WL 3904991, at *7 (E.D. La. Nov. 22, 2006) (297 attorney hours and 110 paralegal hours before applying additional percentage deduction pursuant to the eighth *Johnson* factor; 4 state law claims including a racial hostile environment claim, tried to jury over 3 days).

responding to emails, and scheduling.  Pl.'s Reply at 4.[22]  But courts have found such statements

insufficient to meet a fee applicant's burden to demonstrate that it exercised billing judgment.

*See Walker*, 99 F.3d at 769 ("[T]here is no record of any such billing judgment, as the plaintiffs

allege that they wrote off hours before recording them."); *Black v. Pan Am. Labs., LLC*, A-07-

CV-924-LY, 2012 WL 12950044, at *4 (W.D. Tex. Feb. 15, 2012) (stating that attorneys'

affidavit testimony that—"they wrote off at least 15 to 20 percent of attorney time on the case,

before time entries were converted to the firm's billing system, and did not charge the majority

of lead attorney['s] . . . time in favor of billing at the lower paralegal or associate attorney

rates"—was inadequate to demonstrate the exercise of billing judgment").

Where, as here, there is no evidence of billing judgment, a district court may employ two

methods to fashion an appropriate remedy.  It may reduce the hours awarded by a percentage

intended to substitute for the exercise of billing judgment.  *Saizan*, 448 F.3d at 799; *see also*

*Walker*, 99 F.3d at 770 (15% reduction for lack of billing judgment); *Hopwood*, 236 F.3d at 279

(25% reduction for lack of billing judgment, and vague and duplicative work); *Smith v. Bd. of*

*Commissioners of La. Stadium & Exposition Dist.*, No. CV 17-7267, 2019 WL 7580771, at *4

(E.D. La. Sept. 5, 2019) (listing illustrative cases where courts have reduced fee award by 15%-

50% for lack of billing judgment), *R. & R. adopted,* 2019 WL 7580772 (E.D. La. Oct. 1, 2019).

Alternatively, "[r]ather than simply cutting the award by a percentage," the court may perform "a

line-by-line analysis of the bills presented."  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d

642, 662 (5th Cir. 2002) ("[T]he percentage reduction is nothing more than an abbreviated way

of performing the task ultimately performed by the [line-by-line analysis].").  Here, the Court

will use a hybrid of the two methods: review line-by-line entries that facially claim an

---

[22] *See also* Baeza Aff. at 2 (testifying that "[t]hese records actually provide a conservative estimate of the time I expend on cases, because I do not always record every telephone conversation or meeting."); Martinez Aff. at 2 (testifying the same).

inordinately large number of hours (thus requiring closer scrutiny) and entries for which the

Court is able to more accurately gauge the degree of excessiveness in light of other filings and

evidence on record—but for all other entries, the Court will apply a percentage cut.

For ease of its review, the Court categorizes the billing entries and their respective hours

as follows:[23]

| Categories of Tasks Performed | Hours Claimed for Mr. Baeza | Hours Claimed for Mr. Martinez | Total by Category |
|---|---|---|---|
| Substantive briefs and submissions | 250.75 | 14.25 | 265.00 |
| Trial preparation and trial | 228.50 | 244.15 | 472.65 |
| Deposition preparation and depositions | 79.50 | 5.00 | 84.50 |
| Hearing and mediation | 8.00 | 2.50 | 10.50 |
| Tasks in the remaining entries | 104.20 | 53.25 | 157.45 |
| Total | 670.95 | 319.15 | 990.10 |

In reviewing the billing entries, the Court is mindful that "trial courts need not, and indeed

should not, become green-eyeshade accountants," as "[t]he essential goal in shifting fees . . . is to

---

[23] The billing entries, as submitted by Burns, are categorized under sub-headings such as "Trial," "Prep for Trial," "Pleadings," "Plaintiff's Discovery," etc.; however, many entries for related tasks are listed under different sub-headings. For example, the page numbered 4 lists multiple entries under the sub-heading "Trial Prep . . . ," but the page numbered 17 also lists several entries for similar tasks, such as "Burns Trial Prep," though under a different sub-heading, "Hearings and Meetings."

The Court has regrouped the related entries under the categories listed in the table above. Moreover, in grouping these entries, the Court has considered "whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986). The entries that clearly and singly list clerical work have been lumped into the last category "Tasks in the remaining billing entries." Nevertheless, where an entry was block-billed together with a clerical work, it was placed in the category that is most relevant to the legal work described in the entry.

Further, for ease of citation, the Court has manually added chronological numbers to all entries in the billing record and separately filed the billing record so numbered. *See* Ct.'s Notice to Parties, ECF No. 166. Throughout this opinion, the Court will cite to a specific entry as follows: "Billing Record, Entry No. - - - -."

do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### 1.  *Hours for Substantive Briefs and Pretrial Submissions to the Court*

Here, the Court addresses the hours Burns claims his counsel spent for purposes of (a) the Secretary's motion for summary judgment, (b) pretrial submissions, (c) posttrial briefs and submissions; and (d) trial briefs.  Because the Court finds that the hours expended for trial letter briefs are reasonable,[24] it addresses only the remaining hours.

### (a)  <u>Hours Spent in Opposing Motion for Summary Judgment</u>

Mr. Baeza expended 98.85 hours in preparing Burns's response and sur-reply (including related exhibits, affidavits, and other submissions) to the Secretary's motion for summary judgment; reviewing the Secretary's briefs and related submissions; reviewing the magistrate judge's report and recommendation and the Court's ruling on the R&R and the Secretary's objections thereto.[25] The Secretary asks the Court to reduce these hours in part because Burns was unsuccessful on his hostile work environment claim and retaliation claim.  Def.'s Resp. at 5–7.[26]  As mentioned, at the summary judgment stage, the magistrate judge recommended dismissing the retaliation claim, to which Burns did not object, and subsequently, the Court dismissed the retaliation claim as well as the hostile work environment claim.  *Burns MSJ Op.*, 456 F. Supp. 3d at 831.

---

[24] Billing Record, Entry Nos. 156–157, ECF No. 166-1.

[25] *Id.*, Entry Nos. 61, 64–69, 73–77, 80–82, 84–85, 88, 145.

[26] The Secretary makes this argument broadly for numerous other tasks performed by Burns's counsel between August 24, 2017, and January 28, 2020; the summary judgment related tasks were performed during this period.  Def.'s Resp. at 5 ("Between the time Plaintiff drafted his Original Complaint on August 24, 2017, until the Court entered its Memorandum Opinion and Order on January 28, 2020, Plaintiff requests 247.70 hours in attorney fees for work done relating to pleadings.").

Where the prevailing party is successful on some but not all claims, reduction of hours expended on the unsuccessful claims is warranted, unless the claims are "related"—that is, they "involve a common core of facts, or derive from related legal theories."  *Hernandez v. Hill Country Tel. Co-op., Inc*., 849 F.2d 139, 144 (5th Cir. 1988); *see also Abrams,* 805 F.2d at 536 n.10.  The Court finds that Burns's hostile work environment claim is related to his successful claims (*i.e.*, the disability discrimination and medical inquiry claims, but his retaliation claim is not.  Consequently, the hours expended on the retaliation claim must be deducted.

However, counsel's billing record provides no clue on how many hours were expended on the retaliation claim alone.  To this claim, Burns devoted a significant portion of his brief in response to the Secretary's motion.  The Court deducts 20% of the 55.5 hours[27] (or 11.1 hours) Mr. Baeza spent on the responsive brief and the related submissions.  *See Williams*, 2013 WL 1875055, at *5 (reducing total number of hours by 25% for the unsuccessful claims because the billing records did not contain sufficient detail for the court to determine how much time was spent on such claims).

Moreover, the Court finds that the total number of hours expended at the summary judgment stage is excessive: for example, Mr. Baeza spent a total of 70 hours (without the deduction for unsuccessful claim) in drafting the responsive and sur-reply briefs alone.  The Court deducts additional 15 hours.  In sum, 98.85 hours[28] Mr. Baeza expended in opposing the Secretary's motion for summary judgment and the related tasks are reduced by 26.1 hours.

---

[27] Billing Record, Entry Nos. 64–69.

[28] *Id.*, Entry Nos. 64–69, 75–77, 80, 82, 85, 145.

**(b) <u>Hours Spent on Pre-Trial Submissions</u>**

Following the summary judgment phase, Burns's counsel spent a total of 138.20 hours on tasks related to pretrial submissions that are required by this District's Local Rule CV-16(e):[29] 123.95 hours by Mr. Baeza and 14.25 hours by Mr. Martinez.[30] These hours are further sub-categorized as follows:

| Sub-Categories of Tasks Performed | Hours Claimed for Mr. Baeza | Hours Claimed for Mr. Martinez | Total by Sub-Category |
|---|---|---|---|
| Prepare Burn's initial pretrial submissions (ECF Nos. 45–54)[31] | 40.10 | 0.00 | 40.10 |
| Prepare Burn's amended pretrial submissions (ECF Nos. 64–72)[32] | 17.35 | 5.50 | 22.85 |
| Prepare subsequent amended submissions and joint submissions[33] | 11.25 | 8.00 | 19.25 |
| Review the Secretary's initial and amended pretrial submissions (ECF Nos. 56, 61)[34] | 34.50 | 0.00 | 16.00 |
| Review the Secretary's objections and responses to Burns's pretrial submissions[35] | 8.75 | 0.00 | 8.75 |

---

[29] The Rule requires the parties to serve and file, among others, their proposed voir dire questions, proposed jury instructions, statements of the case, statements of claims or defenses, lists of trial exhibits, lists of trial witnesses, deposition designations, estimated length of trial, and motions in limine.  W.D. Tex. Local Rule CV-16(e). The Court's scheduling order requires them to file these by 21 days before the final pretrial conference setting.  *See, e.g.*, Scheduling Order at 3, ECF No. 11.

[30] *Id.*, Entry Nos. 91–97, 99–101, 103–109, 112–127, 129–139, 142–144, 146–153.

[31] *Id.*, Entry Nos. 90–97, 101.

[32] *Id.*, Entry Nos. 119–126.

[33] *Id.*, Entry Nos. 27, 99, 127, 130, 139, 142–144, 146–149, 151, 153.

[34] *Id.*, Entry Nos. 103–109, 112–118, 137, 150, 152.

[35] *Id.*, Entry Nos. 129, 132, 133, 134.

| | | | |
|---|---|---|---|
| Prepare Burns's objections and responses to the Secretary's pretrial submissions[36] | 12.00 | 0.75 | 12.75 |
| Total | 123.95 | 14.25 | 138.20 |

Specifically, Burns filed two complete sets of pretrial submissions: the first set (ECF Nos. 45–54) on September 26, 2019, and the second set (ECF Nos. 64–72) on January 2, 2020.  The second set consists of Burns's amended pretrial submissions.  Likewise, the Secretary filed two complete sets of pretrial submissions, respectively, on October 3, 2019 (ECF No. 56), and January 2, 2020 (ECF No. 61).  Subsequently, the parties amended one or more documents in their respective second set of submissions, and further filed objections and responses to the other's submissions.

Mr. Baeza spent 27.5 hours and another 12.5 hours in preparing, respectively, the first proposed jury charge and the amended proposed jury charge—for a total of 40.0 hours.[37]  Except for the instructions on Burns' medical inquiry claim and elements thereof, the first proposed charge (ECF No. 46) is largely based on the Fifth Circuit's pattern jury charge. Further, the amended proposed charge (ECF No. 65) differs from the first proposed charge by the addition of a few general instructions (which are also taken from the pattern charge) and stylistic changes. The Court finds that the hours claimed for the proposed jury charges are excessive.  It therefore deducts 11.5 hours for the first charge, and 8.5 hours for the amended charge.

For the first set of pretrial submission, Mr. Baeza spent 3.50 hours in preparing and filing deposition designations (ECF No. 53) for one witness, Ms. Barbara Molinar, and 0.50 hours to prepare a one-sentence notice (ECF No. 54) and file it together with the entire transcript of the

---

[36] *Id.*, Entry Nos. 131, 135, 136, 138, 144.

[37] *Id.*, Entry Nos. 91, 119.

deposition; the Court deducts 0.50 hours as excessive.[38]  Mr. Martinez, on the other hand, spent

5.50 hours to "[r]eview and edit" Burns's amended deposition designations (ECF No. 68).[39]  The

amended designations differ from the original designations (ECF No. 53) only by the addition of

a single sentence that states that the transcript of the witness's deposition is attached as "Exhibit

B."  Further, this entry is vague as to whether Mr. Martinez reviewed the entire deposition

transcript (33 pages long) or simply the portions of the transcript (10 pages in total) that are

designated by reference to their page and line numbers.  The Court reduces Mr. Martinez's hours

by 4.0 on the vagueness and excessiveness grounds.

Mr. Baeza spent 3.6 hours in preparing the amended versions of Burns's proposed voir

dire questions, deposition designations, statement of length of time, and statement of claims.[40]

However, substantively, these amended documents are identical to the original documents, for

the preparation of which Mr. Baeza logged 8.1 hours.[41]  *Cf.* ECF Nos. 47, 49, 50, 53, *with* ECF

Nos. 66, 68, 71, 72.  The Court deducts 3.0 hours as duplicative.

Mr. Baeza reports spending 2.0 hours on January 22, 2020, to "Draft, Review, File and

Prepare Plaintiff's Second Amended Trial Exhibit List"; Mr. Martinez reports spending 0.25

hours on the same day to "Draft, Review, File and Prepare Plaintiff's Second Amended Trial

Exhibit List."[42]  The Court eliminates Mr. Martinez's 0.25 hours as duplicative.

---

[38] *Id.*, Entry Nos. 97, 101.

[39] *Id.*, Entry No. 126.

[40] *Id.*, Entry Nos. 120–121, 124–125, 127.

[41] *Id.*, Entry Nos. 92–94, 97, 101.

[42] *Cf. id.* Entry No. 139, *with id.*, Entry No. 27.

Mr. Baeza spent 16.00 hours and 12.5 hours (for a total of 28.5 hours) for reviewing two

sets (initial and amended versions) of the Secretary's pretrial submissions.[43]  The amended

submissions (ECF Nos. 61–61-4) differ from the initial submissions (ECF Nos. 56–56-4)

minimally, if at all.  For example, the Secretary submitted a list of proposed trial exhibits (ECF

No. 56-2) in October 2019, and then an amended list (ECF No. 61-2) in January 2020.  The lists,

which are identical and each 1-1/2 pages long, describe nineteen exhibits in a table; with the

exception of one exhibit, Burns had previously submitted the exhibits as part of his response

(ECF No. 26-2) to the Secretary's motion for summary judgment.  Mr. Baeza nonetheless logged

3.0 hours to review the October list and another 1.0 hour to review the January list.[44]  As another

example, the Secretary submitted, as part of his initial pretrial submission, a document entitled

"Defendant's Pretrial Disclosure" (ECF No. 56), which contains his statements of the case in a

short paragraph, followed by a list of proposed stipulated facts (each listed item containing 1-2

short sentences); Mr. Baeza spent 4.50 hours to review them.[45]  He spent another 4.0 hours to

review the amended version of the same document (ECF No. 61), which adds only a few

modifications to the statement of the case.[46]  The Court finds that 28.5 hours spent in reviewing

these documents were excessive, and therefore deducts 14 hours from Mr. Baeza's time.

Further, Mr. Baeza spent 6.00 hours to "[d]raft, research, and file" Burns's objections

(ECF No. 76) to the Secretary's proposed trial exhibits.[47]  His objections—only to two

exhibits—span two short paragraphs, each with one to two sentences.  Moreover, the entry is

---

[43] *Id.*, Entry Nos. 103–109, 112–118.

[44] *Id.*, Entry Nos. 105, 114.

[45] *Id.*, Entry No. 103.

[46] *Id.*, Entry No. 112.

[47] *Id.*, Entry Nos. 131.

vague as to what "research" he conducted.  *See La. Power & Light Co.*, 50 F.3d at 326 ("The district court may properly reduce . . . hours . . . for vague entries such as 'legal research.'" (internal quotes and citations omitted)).   The Court deducts 5.00 hours on the vagueness and excessiveness grounds.

Mr. Baeza drafted proposed stipulated facts on three occasions, clocking, respectively, 2.50, 1.25, and 3.50 hours—for a total of 7.25 hours.[48]  On these, the Court deducts 3.0 hours as excessive.  Further, for purposes of conferring with the Secretary's counsel, Mr. Martinez reviewed the proposed stipulated facts on three occasions, logging, respectively, 0.75, 1.50, and 1.0 hours—for a total of 3.25 hours.[49]  The Court deducts 2.0 hours from Mr. Martinez's time on the excessiveness ground.

Finally, the Court finds the hours spent in reviewing the following objections and responses to the pretrial submissions were excessive and reduces them accordingly.  The Court deducts 2.25 hours from 2.50 hours Mr. Baeza spent in reviewing the Secretary's objections (ECF No. 74) to Burns's amended list of exhibits:[50] of the 36 exhibits Burns listed, the Secretary objected to only three exhibits, each with a short statement stating the ground for the objection, such as "relevance, FRE 401."  The Court also deducts 0.75 hours from 1.00 hour Mr. Baeza spent in reviewing the Secretary's response (ECF 78) to Burns's amended voir dire questions:[51] the response is two short sentences long.  The Court additionally deducts 2.75 hours from 3.25 hours Mr. Baeza spent in reviewing the Secretary's objections (ECF No. 79) to Burns's amended

---

[48] *Id.*, Entry Nos. 95, 122, 130.

[49] *Id.*, Entry Nos. 99, 127, 143.

[50] *Id.*, Entry No. 129.

[51] *Id.*, Entry No. 133.

proposed jury charge:[52] the objections are set out in six short paragraphs within less than two pages.  The Court moreover deducts 0.50 hours from 0.75 hours Mr. Martinez spent in reviewing Burns's objections (ECF No. 76) to the Secretary's proposed trial exhibits:[53] each of Burns's two objections is one to two short sentences long.

In sum, the Court deducts 51.25 hours from 123.95 hours Mr. Baeza spent and 6.75 hours from 14.25 hours Mr. Martinez spent on their tasks related to the pretrial submissions.

**(c) Hours Spent on Posttrial Briefs and Submissions**

Mr. Baeza spent 3.50 hours in preparing a proposed final judgment (ECF No. 114).[54] The time spent is excessive, and therefore, the Court deducts 2.00 hours.

Mr. Baeza spent 20.25 hours for preparing the instant fee motion.[55]  In the Fifth Circuit, "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."  *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985).  Although the Court finds the hours spent in preparing the fee motion are excessive, it declines to reduce them because at the time the motion was filed, Burns was yet to file his reply brief (ECF No. 129) in support of the fee motion and as such, counsel's time spent on the reply brief was not included on the billing record.  The Court finds that 20.25 hours (charged as Mr. Baeza's time) were reasonably expended in preparing Burns's opening and reply briefs on the fee motion.

---

[52] *Id.*, Entry No. 134.

[53] *Id.*, Entry No. 135.

[54] *Id.*, Entry No. 173.

[55] *Id.*, Entry No. 175.

Further, two weeks after Burns filed this motion, the Secretary filed a renewed motion for judgment as a matter of law, or in the alternative, motion for new trial or remittitur (ECF No. 119).  Consequently, the time Burns's counsel spent in preparing his briefs (ECF Nos. 120, 161) in opposition to the Secretary's motions was also not included in the billing record.   The Court, in its discretion, awards Burns 16.00 hours (charged as Mr. Baeza's time) for the attorney time spent in connection with the Secretary's posttrial motions.  The Court will add this time at the end of its calculation *infra*.

### 2.   *Hours for Trial Preparation and Trial*

Between January 20, and February 10, 2020, Mr. Baeza spent 228.5 hours[56] and Mr. Martinez spent 244.15 hours[57] for trial preparation and trial.  Thus, the total number of hours claimed is 472.65—a significantly large number for a trial that lasted for approximately 27 hours in this simple case.  *See* Minutes of Civ. Proceedings, ECF Nos. 93 (February 3, voir dire), 94 (February 4, 1st day of liability trial), 97 (February 5, 2nd day of liability trial), 98 (February 6, 3rd day of liability trial), 101 (February 7, 4th and final day of liability trial), 107 (February 10, 1st and last day of damages trial).

Of the 43 total entries claiming a total of  472.65 hours for both counsel, 22 are described identically as "Summarize depositions, develop witness questions, review discovery, legal research and exhibit books"; with the exception one entry (which claims 4.00 hours), each of these entries claims 11-15 hours.[58]  Of the remaining entries, four are described identically as "Trial – Summarize depositions, develop witness questions, review discovery and exhibit books,"

---

[56] *Id.*, Entry Nos. 6–15, 17-24.

[57] *Id.*, Entry Nos. 1–5, 25–26, 28–37, 234–236, 238–243.
[58] *Id.*, Entry Nos. 13–14, 25–26, 28–29, 31–37.

each entry claiming 15-18 hours;[59] three are described identically as "Trial - work before, during and after Trial," each entry claiming 11-18.50 hours; and two are described identically as "Burns Trial Prep," claiming a total of 18.0 hours. [60]

 The sheer number of hours expended each day for preparation before trial standing alone requires substantial reduction. *See Chrapliwy v. Uniroyal, Inc.*, 583 F. Supp. 40, 50 (N.D. Ind. 1983) ("A day with 10 billable hours, while extraordinary, will occasionally occur. But 17 days where billable hours equaled or exceeded 12 hours is not justifiable. A 20 hour day is questionable."); *Allen v. City of Los Angeles*, No. CV 91-2497 JGD (TX), 1995 WL 433720, at *8 (C.D. Cal. Jan. 13, 1995) ("The court may reduce . . .claims of having worked an inordinate number of hours in a single day."). Moreover, as the Secretary points out, the billing entries for trial days (February 3-7)—either standing alone or in combination with other entries for the same days listed elsewhere in the billing record—amount to 15-20 hours per day. *See* Def.'s Resp. at 8. Courts have found suspect such large numbers of daily hours billed even during trial. *See Hastings v. Tri-State Motor Transit Co.*, Nos. 86-5172-CV-SW-1, 86-5173-CV-SW-1, 1989 U.S. Dist. LEXIS 10571, at *48-49 (W.D. Mo. Sep. 5, 1989) ("It is particularly suspect to this court to recognize the tremendous amount of time preparing for trial and to have these attorneys attempt to bill 14 to 18 hours per day during the trial of this case, and the justification offered for this is that the attorneys billed each day in court and then spent the additional seven to ten hours

---

[59] *Id.*, Entry Nos. 2–3, 7–8.

[60] *Id.*, Entry Nos. 235, 238.

preparing for trial the next day. Obviously, such preparation would not be necessary if indeed the attorneys did prepare for trial as previously billed.").[61]

Moreover, the descriptions for these entries, as quoted above, are too vague for the Court to determine whether they represent a reasonable use of time. *See League of United Latin Am. Citizens No. 4552 (LULAC)*, 119 F.3d at 1233 (stating district court may disallow hours spent for "research and review of cases" on vagueness); *Williams*, 2013 WL 1875055, at *3 ("[T]he billing entry 'preparation for trial' is vague."); *Dinet*, 2006 WL 3904991, at *9 (holding entries for "trial preparation and planning," and "work on trial exhibits" are too vague); *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2005 WL 1578810, at *16 (E.D. La. June 28, 2005) (Time sheet entries stating "study documents (discovery , etc.)" are inadequate to support fee request.)

Further undermining the Court's reasonableness inquiry is counsel's heavy utilization of the block-billing method: for example, "Summarize depositions, develop witness questions, review discovery, legal research and exhibit books." *See Carroll v. Sanderson Farms, Inc.*, No. CIV.A. H-10-3108, 2014 WL 549380, at *8 n.5 (S.D. Tex. Feb. 11, 2014) ("Block billing can impede the court's ability to determine whether the amount of time spent on the different tasks is reasonable."); *see also Verizon Bus. Global LLC v. Hagan*, No. 07–0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases where reductions for block billing between 15% and 35% have been found reasonable), *), R&R adopted*, 2010 WL 5057517 (E.D. La. Dec. 1, 2010), *vacated sub nom. on other grounds MCI Commc'ns. Servs., Inc. v.* Hagan, 467 F. App'x 312 (5th Cir. 2012).

---

[61] *Cf. Deitz v. Univ. of Denver*, No. 95-CV-02756-WDM-OES, 2011 WL 723118, at *13 (D. Colo. Feb. 22, 2011) ("Even in trial, . . . twenty-nine days straight of twelve hours of chargeable time each day simply defies professional belief.").

The Court therefore reduces the hours claimed for trial preparation and trial by 65% for excessiveness, vagueness, block-billing, and failure to exercise billing judgment.  In other words, Mr. Baeza's time (228.5 hours) claimed for trial and trial preparation is reduced by 148.5 hours and Mr. Martinez's time (244.15 hours) by 158.70 hours.

### 3.   Hours for Deposition

Between September 28, and October 4, 2020, Mr. Baeza spent 55 hours to prepare for deposition[62] and Mr. Martinez spent 5 hours to do the same.[63]  With the exception of two entries ("Depo prep with Plaintiff"),[64] the entries for deposition preparation are described as "Deposition Prep for [deponent's name]; review discovery and potential exhibits," each claiming 2-13 hours. The Court deducts 20% from these hours for vagueness and inadequate documentation: that is, Mr. Baeza's time is reduced by 11 hours, and Mr. Martinez's time is reduced by 1.0 hours.

Mr. Baeza also billed 24.5 hours for conducting and defending depositions of nine deponents over five different days.[65]  According to the deposition transcripts (which the parties' submitted with their summary judgment briefings), the actual time spent for these depositions was approximately 16 hours in total.  The Court deducts 8.5 hours from the claimed time for deposition.  In sum, the total time (79.5 hours) claimed for Mr. Baeza to prepare for, and conduct or defend, depositions is reduced by 19.5 hours, whereas Mr. Martinez's time (5 hours) to do the same is reduced by 1.0 hours.

---

[62] Billing Record, Entry Nos. 194, 196–203, 223.

[63] *Id.*, Entry Nos. 195, 224.

[64] *Id.*, Entry Nos. 223–224.

[65] *Id.*, Entry Nos. 204–212.  Each entry is described as "Deposition of [deponent's name]."

### 4.  *Hours for Tasks in the Remaining Billing Entries*

This brings us to the last category of the hours claimed in the billing entries that the Court has not considered thus far: 104.20 hours for Mr. Bazea and 53.25 for Mr. Martinez, totaling 157.45 hours.  These hours account for a smorgasbord of tasks, including drafting and/or reviewing administrative case file (23.50 hours), complaint and answer (8.00 hours), written discovery (57.25 hours), non-substantive court documents (for example, notices of attorney appearance, notices of deposition, motions for extension of time, orders resetting trial, minutes of trial, etc., claiming a total of 17.75 hours), emails (approximately 240 entries totaling 42.95 hours), correspondence (4.75), and meetings (4.25).

A substantial number of these entries suffer from similar defects as the ones in the categories discussed above: for example, block-billing, excessiveness, and vagueness.  For example, Mr. Martinez spent 11.50 hours to "[r]eview agency investigative file and make annotations; research causes of action and potential defenses by agency;"[66]—a block-billed entry.  At least two entries appear to be duplicative: each is described as "Review final agency decision and discuss with plaintiff Burns" and claims 3.50 hours for Mr. Martinez;[67] moreover, the EEO's final decision (ECF No. 22-5) is seven pages long (five pages, excluding statements of general laws), and 7.00 hours spent to review and discuss the decision seem excessive.[68] Among many other vague entries, one claims 3.00 hours for Mr. Baeza for "Discovery Disputes and Document Production Request."[69]

---

[66] *Id.*, Entry No. 214.

[67] *Id.*, Entry Nos. 215, 217.

[68] Many of the documents from the administrative investigative file were submitted into record as part of the parties' briefing on the Secretary's summary judgment motion. *See e.g.*, ECF No. 26-2.

[69] Billing Record, Entry No. 251.

Moreover, many of these entries include hours counsel spent on clerical activities.[70]
Clerical activities includes "'copying, typing, labeling, faxing, mailing, filing, and/or delivering
pleadings/documents.'" *Chacon v. City of Austin, Tex.*, No. A-12-CA-226-SS, 2015 WL
4138361, at *7 (W.D. Tex. July 8, 2015) (quoting *Dinet*, 2006 WL 3904991, at *8).  Clerical
work should be compensated at a lower rate than the rate for legal work, and in some
circumstances, it may justify a reduction in the number of compensable hours.  *Walker*, 99 F.3d
at 770; *Johnson*, 488 F.2d at 717; *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985).[71]  The
Court has identified seven entries that clearly list only clerical work, totaling 4.15 hours for Mr.
Baeza and 0.25 hours for Mr. Martinez.[72]  However, the vast majority of the instances of clerical
activities are block-billed with other tasks: for example, "Review and *Prepare* Trial Notebooks"
(4.00 hours for Mr. Baeza), "Plaintiff's Supplemental Disclosures - Draft, *Copy* and *fax*" (2.00
hours for Mr. Baeza); "Plaintiff's Exhibit List - Discuss with Client, draft, *copy* and *fax*" (4.50
hours for Mr. Baeza); and "Draft and *File* Joint Motion for Extension of Time" (0.75 hours for
Mr. Baeza).[73]  In particular, twenty or more entries with "draft and file" appear among the hours
under consideration in this subsection of the Opinion.  As a result, the Court is unable to
determine the actual number of hours expended on various clerical activities; it will therefore
apply a percentage reduction.

---

[70] The Court observes that counsel's law firm employs a secretary and a legal assistant.  Baeza Aff. at 1.

[71] *See also Hagan v. MRS Assocs., Inc.*, No. CIV. A. 99-3749, 2001 WL 531119, at *9 (E.D. La. May 15, 2001) ("Normally, clerical or secretarial costs are part of an attorney's office overhead and are reflected in the billing rate."), *aff'd*, 281 F.3d 1280 (5th Cir. 2001).

[72] Billing Record, Entry Nos. 40, 70, 188, 247, 250, 256–258.

[73] *E.g.*, *id.*, Entry No. 16, 90, 183, 189.

The Court deducts 55% from the hours claimed in the remaining entries (discussed in this subsection of this Opinion) for excessiveness, vagueness, block-billing, clerical tasks charged as counsel's time, and failure to exercise billing judgment.  That is, Mr. Baeza's time (104.20 hours) is reduced by 57.3 hours and Mr. Martinez's 53.25 hours are reduced by 29.3 hours.

**D.  *Summary of the Lodestar Analysis***

To recap, Burns claims that Mr. Baeza spent 670.95 hours and Mr. Martinez spent 319.15 hours, together in aggregate 990.10 hours.  After accounting for the above discussed reductions and deductions, and—adding 16 hours as substitute for the unclaimed time spent on Burns's response to the Secretary's renewed motion for judgment as a matter of law and in the alternative, motion for a new trial, *see* Part II(C)(1)(c), *ante*—the Court finds that Mr. Baeza reasonably expended 386.35 hours and Mr. Martinez 123.40 hours, together in aggregate 509.75 hours.  The Court has found that the reasonable hourly rates for Mr. Baeza and Mr. Martinez are $185 and $250, respectively.  The Court multiplies these hours by the reasonable hourly rates, resulting in a lodestar of $71,474.75 for Mr. Baeza and $30,850.00 for Mr. Martinez—for a total of $102,324.75.

**E.  *Johnson* Factors**

Once a court has calculated the lodestar, it may adjust upward or downward after considering the *Johnson* factors.  Burns requests an upward adjustment of the lodestar, Pl.'s Mot. for Att'y Fees & Costs at 5–9, and the Secretary opposes that request, Def.'s Resp. at 16–18. The *Johnson* factors are:

(1) the time and labor required to represent the client or clients;

(2) the novelty and difficulty of the issues in the case;

(3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney;

(5) the customary fee charged for those services in the relevant community;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19; *see also Walker*, 99 F.3d at 772 ("The Supreme Court has barred any use of the sixth factor. The seventh factor is subsumed in the number of hours reasonably expended.").  The court should give special heed to the first, fifth, eighth, and nineth factors. *Saizan*, 448 F.3d at 800.  "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Id.*[74]

A strong presumption exists that the lodestar represents a reasonable fee and should be modified only in exceptional cases.  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *Pembroke v. Wood Cty.*, 16 F.3d 1214 (5th Cir. 1994) (same); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[A]lthough we have never sustained an enhancement of a lodestar amount for performance, we

---

[74] *See also Green*, 284 F.3d at 661 ("To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required."); *Jason D. W. v. Hous. Indep. School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (discussing the *Johnson* factors and noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted").

have repeatedly said that enhancements may be awarded in 'rare' and 'exceptional' circumstances." (citation committed)).

The Court has considered several of the *Johnson* factors in its determinations of the reasonable hours expended and the hourly rates.  For example, it has considered the first factor in determining reasonable hours expended, *see* Part II(C), *ante*, and the second, third, fifth and nineth factors in determining the attorneys' hourly rates, *see* Part II(B), *ante*; *see also* Part II(A) (finding that it is not a complex case), *ante*.   It considered the second factor again in assessing reasonable hours expended for trial and trial preparation.  *See* Part II(C)(2) (noting excessive hours claimed for trial in this simple case), *ante*.  The Court also considered the nineth factor in determining reasonable hourly rates, *see* Part II(B), *ante*, and in deciding whether the claimed hours suggest that counsel failed to exercise billing judgment, *see* Part II(C) & footnote no. 21 (listing illustrative cases), *ante*.

As to the fourth factor, Burns makes two arguments why it favors an enhancement; neither is persuasive.  First, he argues that "the length of time it took to get this case to trial" could have been spent on other matters by his counsel.  Pl.'s Mot. for Att'y Fees & Costs at 7.[75] As their billing record reflects, however, counsel spent the vast majority of the claimed hours within multiple short periods of time separated by longer periods of time with little to no activity: around deposition, around the summary judgment stage, during the last month before trial, and during trial.  That being typical of any lawsuit does not convert this case into an exceptional one requiring enhancement.  Second, speaking for his counsel, Burns alleges that for over two weeks, his counsel had to turn away several potential clients and decline several cases because of trial

---

[75] The Court notes that before trial, the parties filed no fewer than thirteen joint or unopposed motions to continue various deadlines, including trial settings—which may have, in part, lengthened the time to trial.

and trial preparation.  *See id.*  Burns, who has the burden to show that enhancement is necessary, *see Walker.*, 99 F.3d at 771, *supra*, offers no evidence to substantiate that allegation.

Regarding the eighth factor, the Court is not presented with any information about the amount of damages Burns sought at the early stage of this litigation; his complaint does not state an amount.  At trial, his counsel asked the jury to award Burns $200,000 in emotional damages, and in addition, the parties stipulated to back pay in the amount of $3,068.56.  *Burns JMOL Op.*, 2020 WL 7223922, at *22.  Ultimately, Burns obtained a judgment for $93,068.56.  This factor does not favor any modification, upward or downward, to the lodestar amount.

In sum, considering the *Johnson* factors, the Court finds that this is not an exceptional case, and further that neither an upward, nor a downward, adjustment of the lodestar is warranted.  Accordingly, the Court awards Burns $102,324.75 in reasonable attorney's fees.

## F.  Costs

Burns also seeks to recover $5,036.05 in costs.  In support, he submitted a standard form (AO 133) bill of costs itemizing costs incurred, together with evidence in support thereof.  Mot. for Att'y Fees & Costs, Ex. 4, ECF No. 116-4; Baeza Aff. at 2 ("[A]ll costs involved in this case have been fully paid by me.").  The Secretary does not address Burns's request for costs. Having carefully reviewed the documents submitted in support of the request, the Court awards costs in the amount requested.

## III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's "Motion for Attorney Fees and Costs" (ECF No. 116) is **GRANTED IN PART.**

**IT IS THEREFORE ORDERED** that Defendant **SHALL PAY** to Plaintiff **$102,324.75** in reasonable attorney's fees and **$5,036.05** in chargeable costs.

**IT IS FURTHER ORDERED** Defendant post-judgment interest on the attorney fee award at the rate of **0.09%** to be compounded annually, from the date of this Memorandum Opinion and Order, and post-judgment interest on the costs award at the rate of **1.46%** to be compounded annually, from February 25, 2020 (the date of the judgment on merits)—until such time Defendant satisfies theses sums awarded.[76]

So ORDERED and SIGNED this **12th** day of February 2021.

_____

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

---

[76] *See* 28 U.S.C. § 1961(a); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir. 1983) (en banc) ("The relevant judgment for purposes of determining when interest begins to run is the judgment establishing the right to fees or costs, as the case may be. If costs are allowed without express mention in the judgment, the date of the judgment starts the accrual of interest on the costs due. . . . If . . . judgment is rendered without mention of attorneys' fees, and the allowance of fees is within the discretion of the court, interest will accrue only from the date the court recognizes the right to such fees in a judgment." (internal citations omitted)), *overruled in part by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir. 1986); *see also La. Power & Light Co.*, 50 F.3d at 332 ("We therefore hold that *Kaiser* [*Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990)] did not overrule *Copper Liquor*.").